STATE *vs.* INTOXICATING LIQUORS BY LIBEL,

and Grand Trunk Railway Company of Canada, Claimant and Appellant.

Cumberland. Opinion September 21, 1900.

*Intox. Liquors. Inter-State and Const. Law. R. S., c. 27, § 31.*

The Act of Congress of August 8, 1890, commonly known as the "Wilson Act," was not intended to, and does not cause the power of a state to, attach to interstate commerce shipments whilst the merchandise is in transit under such shipments, until its arrival at the point of destination and delivery there to the consignee.

Intoxicating liquor was shipped from Portsmouth, N. H., in October, 1899, by the Boston and Maine, and the Grand Trunk Railroads, accompanied by a continuous way-bill, and was consigned to a person in Lewiston, Maine. While it was in the car, standing on the siding at Auburn, it was seized by the Auburn police officers, taken from the car and removed to the depository where seized liquors are kept. At the time of its seizure it was in transit, not having reached its destination nor having been delivered to the consignee.

According to the authority of the Supreme Court of the United States in the case of *Rhodes* v. *Iowa,* 170 U. S. 412, in a similar case, it follows that this seizure was made while the liquor continued to be an interstate shipment, and before it had become subject to the operation of the laws of the state of Maine.

*Held;* that the seizure was therefore premature and unauthorized.

Whether, after actual notice to the consignee of the receipt of the goods in the freight warehouse, and neglect on his part to remove them after the lapse of a reasonable time, the warehouseman may under some circumstances be deemed to hold them as agent of the consignee, and the act of interstate commerce accordingly be held complete, is a queston which was not considered by the federal court, nor does it arise in the case at bar; for it distinctly appears here that the liquor was seized before it had reached its destination, and before its delivery to the consignee.

*Held;* that while, therefore, intoxicating liquor continues to be recognized by federal authority as a legitimate subject of interstate commerce, that clause of § 31 of chap. 27 of the revised statutes of Maine which declares that "no person shall knowingly bring into the state . . . . any intoxicating liquor with intent to sell the same in the state in violation of law," must be held inoperative as repugnant to the constitution of the United States.

AGREED STATEMENT.

This was a search and seizure process under c. 37, § 31, R. S., begun in the municipal court of Auburn, and followed by the usual proceedings, upon a libel against the liquors seized for their condemnation under the statute.

The Grand Trunk Railway of Canada intervened as claimant and filed the following claim for the liquors:

And now comes The Grand Trunk Railway Company of Canada, a corporation created and existing under the laws of the Dominion of Canada, and a citizen of said Dominion of Canada, said corporation being a common carrier, and specifically claims the right, title and possession in the items of property hereinafter named, as having a right to the possession thereof at the time when the same were seized.

And the foundation of said claim is that they were in possession of said Grand Trunk Railway Company of Canada, and were in transit from Portsmouth in the State of New Hampshire to Lewiston in the State of Maine, and were taken from the lawful possession of said The Grand Trunk Railway of Canada on the sixth day of October, A. D. 1899, from a box car standing on said Company's track near the depot of said company, situated on the east side of Main street, in Auburn, in the county of Androscoggin, by Fred L. Austin, one of the constables of said Auburn, and this claimant declares that said items of property were not so kept or deposited for unlawful sale, as is alleged in the libel of said Fred L. Austin and in the monition issued thereon. The property claimed as aforesaid is as follows:—

One barrel containing thirty-two (32) gallons of ale, marked Defunct Moncul, Lewiston, Maine.

Dated at Auburn, in said County, this nineteenth day of October, in the year of our Lord one thousand eight hundred and ninety-nine.

The Grand Trunk Railway Company of Canada,

By JAMES A. BYRON, its Agent.

The liquor was declared forfeited by a pro forma ruling in that court, and the claimant appealed to this court, where the parties agreed to the statement of facts as substantially stated in the opinion of the court.

*C. A. and L. L. Hight,* for claimant.

*George E. McCann,* county attorney, for State.

SITTING: WISWELL, C. J., HASKELL, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.   This case comes to the law court on the following agreed statement of facts:

"The liquor concerned in this case had been shipped at Portsmouth, New Hampshire, via Boston and Maine Railroad and Grand Trunk Railway, accompanied by a continuous way-bill, and was consigned to a person in Lewiston, Maine.   While in transit and before delivery to consignee, it was seized by the police officers at Auburn.

"On the night of October 6th, A. D. 1899, a car containing the intoxicating liquors in question, while in the ordinary course of transportation, was attached to Grand Trunk train No. 43 at Lewiston Junction and was drawn thence to the city of Auburn. There, to secure the convenience of passengers, and to enable them to alight at the station platform at Lewiston, this car was left standing on the siding.   When the passenger coaches had been taken to the passenger station at Lewiston, the engine and crew returned to the siding at Auburn for the purpose of removing this car to the freight house track in Lewiston, where the liquors were to have been delivered to the consignee.

"The liquor had been shipped by a brewery company doing business at Portsmouth, in the state of New Hampshire, and was being carried, accompanied by a continuous way-bill, issued by the Boston and Maine Railroad at Portsmouth, from said Portsmouth by way of the Boston and Maine Railroad to Portland, and thence by way of the Grand Trunk Railway to Lewiston.   While it was standing on the siding at Auburn it was seized by the Auburn police officers, taken from the car and removed to the depository where seized liquors are kept.   At the time of its seizure it was in transit, not having reached its destination nor having been delivered to the consignee."

It was contended by the Grand Trunk Railway Company of Canada that the seizure of this liquor by the police officers of Auburn, before its delivery to the consignee, was in violation of the third clause of section eight of the first article of the Constitution of the United States, conferring upon Congress the power "to regulate commerce with foreign nations and among the several states." But the judge of the municipal court held that the seizure was legal and declared the liquor forfeited. From this decision the claimant appealed to the supreme judicial court.

It is manifest that the seizure of the liquor in question, under the circumstances disclosed in the agreed statement of facts, must be justified, if at all, by the provisions of section thirty-one of chapter twenty-seven of the revised statutes of Maine, and of chapter 728 of the act of congress of August 8, 1890. Section 31, chap. 27 of the R. S. is as follows:

"No person shall knowingly bring into the state, or knowingly transport from place to place in the state, any intoxicating liquors with intent to sell the same in the state in violation of law, or with intent that the same shall be so sold by any person, or to aid any person in such sale, under a penalty of fifty dollars for each offense. All such liquors intended for unlawful sale in the state may be seized while in transit and proceeded against, the same as if they were unlawfully kept and deposited in any place."

The act of congress of August 8, 1890, commonly known as the Wilson act, is in these terms:

"All fermented, distilled or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

It is insisted, however, in behalf of the claimant that, inasmuch as the transportation of intoxicating liquors from one state to

another is declared to be interstate commerce, the regulation of which has been committed to congress by the federal constitution (*Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465) any construction of these statutes which would authorize a seizure of liquors under the circumstances disclosed in the case at bar, would give to the statute of Maine an extra-territorial operation and, to that extent, render the act repugnant to the constitution of the United States, as hereinbefore stated.

The *Bowman case*, supra, (125 U. S. 465) decided before the passage of the Wilson act of August 8, 1890, was an action to recover damages against a railway company for refusing to carry the liquor in question from Illinois into Iowa. In defense the company sought to justify its refusal by the provisions of the Iowa statute which prohibited the delivery of intoxicating liquors within that state. But it was the opinion of a majority of the court that the transportation of such liquors from one state into and across another was interstate commerce, and as such was protected from the operation of state laws from the moment of shipment until the act of transportation was terminated. It was accordingly held, although by a divided court, that the statute of Iowa of the same scope and effect as the Maine statute above quoted, so far as it affected interstate commerce, was repugnant to the constitution of the United States and void.

In *Leisy* v. *Hardin*, 135 U. S. 100, announced two years later, but prior to the passage of the Wilson act of 1890, it was held, also by a divided court, three justices dissenting, that the right to sell the imported liquor in the original packages free from interference by state laws was also protected by the federal constitution, as by the act of sale alone the merchandise would become mingled with the common mass of property in the state. "Up to that point of time," say the court, "we hold that in the absence of congressional permission to do so, the state had no power to interfere by seizure, or any other action in prohibition of importation and sale by the foreign or non-resident importer. . . . . The responsibility is upon congress, so far as the regulation of interstate commerce is concerned, to remove the restriction upon the state in

dealing with imported articles of trade within its limits, which have not been mingled with the common mass of property therein, if in its judgment the end to be secured justifies and requires such action."

Thereupon Congress promptly interposed by enacting the Wilson law above quoted, declaring that all such liquors transported into any state "shall, upon arrival in such state" . . . . "be subject to the operation and effect of the laws of such state."

But recognizing the paramount authority of the federal decisions upon this subject, our own court announced its judgments in two cases which 'had arisen prior to the passage of the Wilson act, viz: *State* v. *Intox. Liquors, Michael Burns, claimant,* 82 Maine, 558, and *State* v. *Intox. Liquors, Boston & Maine Railroad, claimant,* 83 Maine, 158.

The construction of the Wilson act was not determined by the Supreme Court of the United States until it was brought directly in question in the case of *Rhodes* v. *Iowa,* 170 U. S. 412. In that case the intoxicating liquor in question was transported under a continuous way-bill from Illinois to a point in Iowa by one line of railway, and thence by another line of railway, wholly within the latter state, to the place of its destination. The package had been removed from the car and deposited on the platform by the trainmen. It was then carried by the plaintiff, the station agent at that point, into the freight warehouse, where it remained about an hour, when it was seized by a constable under a search warrant. For this act of moving the goods from the platform to the freight house, the plaintiff in error was convicted in the state court under the statute of Iowa of unlawfully conveying intoxicating liquor "from one place to another in the state." Whether the consignee had actual notice of the arrival of the package, and a reasonable opportunity to remove it from the freight warehouse before the seizure did not appear. It was held by the federal court, again divided, three justices dissenting, that this conviction was erroneous, for the reason that the act of the plaintiff in thus moving the package was a part of the interstate commerce transportation, and was performed before the law of Iowa could constitution-

ally attach to it.   In the majority opinion it is said:   "We think that, interpreting the statute by the light of all its provisions, it was not intended to, and did not cause the power of the state to, attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment and until its arrival at the point of destination and delivery there to the consignee."

Whether, after actual notice to the consignee of the receipt of the goods in the freight warehouse, and neglect on his part to remove them after the lapse of a reasonable time, the warehousemen may under some circumstances be deemed to hold them as agent of the consignee, and the act of' interstate commerce accordingly be held complete, is a question which was not considered by the federal court.   Nor does it arise in the case at bar; for it distinctly appears here that the liquor was seized by the police officers in the cars of the railway company while it was standing on the siding at Auburn before it had reached its destination in Lewiston, and it is expressly conceded in the agreed statement of facts that the seizure was made while the liquor "was in transit and before its delivery to the consignee".   It follows that upon the authority of *Rhodes* v. *Iowa*, supra, this seizure was made while the liquor continued to be an interstate shipment, before the transportation of it had terminated and before it had become subject to the operation of the law of the State of Maine.   The seizure was therefore premature and unauthorized.

The observation of Chief Justice PETERS in *State* v. *Burns*, 82 Maine, 558, supra, respecting the federal case of *Leisy* v. *Hardin*, supra, is equally applicable to *Rhodes* v. *Iowa*, above cited:   "The opinion of a minority of the court sitting in that case appears to be very elaborate and exhaustive of the question involved, and may commend itself to many as containing the better conclusion.   Our obedience is due, however, to the judgment which prevails."

While, therefore, intoxicating liquor continues to be recognized by federal authority as a legitimate subject of interstate commerce, that clause of section 31 of chapter 27 of the revised statutes of Maine which declares that "no person shall knowingly bring into the state   .   .   .   .   any intoxicating liquor with intent to sell

the same in the state in violation of law ", must be held inoperative as repugnant to the constitution of the United States.

The entry must therefore be,

<div align="center">

*Judgment for the claimant.*

*Order for return of liquors to issue.*