Coös,  
April 1, 1902.

CORBIN & a. *v.* McCONNELL.

The statute making penal the solicitation of orders in this state for the delivery of liquors in another state, with knowledge that they are to be sold here in violation of law, is a regulation of commerce among the states without the permission of congress, and void.

The price of liquors sold and delivered in a state where such sale is lawful, upon orders obtained in this state in violation of section 19, chapter 112, Public Statutes, may be recovered here.

ASSUMPSIT, to recover a balance unpaid on the sale of spirituous liquors. Facts found, and case transferred from the November term, 1901, of the superior court, by *Wallace*, C. J.

The plaintiffs were wholesale liquor dealers in Cincinnati, Ohio, and the defendant a retail dealer at Groveton in this county. The plaintiffs' agent solicited orders for the liquors in the defendant's barroom at Groveton and forwarded the orders to the plaintiffs at Cincinnati, who reserved the right to accept or reject all orders. The liquors were delivered to carriers in Cincinnati for the defendant, and the defendant paid the cost of transportation to Groveton, where he received them. The sale of the liquors was authorized by the laws of Ohio. The agent knew when he solicited the orders that the defendant bought the liquors for the purpose of selling them in this state in violation of law. The liquors were bought in 1896 and 1897. The amount due on the bill to December 6, 1901, is $161.22, and the plaintiffs, if entitled to recover, should have judgment for that sum with costs.

*Drew, Jordan & Buckley*, for the plaintiffs.

*Sullivan & Cleaveland*, for the defendant.

WALKER, J.   " The statute making penal the solicitation or tak-
ing of orders in this state for the delivery of liquors in another
state, with knowledge or reasonable cause to believe they are to be
brought here and sold in violation of law, was intended to have and
has had the effect to prevent, or to discourage and restrict, com-
merce in liquors between citizens of this and other states.   *Jones*
v. *Surprise*, 64 N. H. 243, 246.   It regulates commerce among the
states without the permission of congress, and must therefore, in
accordance with the judgment of the federal supreme court, be de-
clared void."   *Durkee* v. *Moses*, 67 N. H. 115, 117.   The judgment
referred to was rendered in the case of *Leisy* v. *Hardin*, 135 U. S.
100, where the court say (*p.* 124): "The plaintiffs in error are
citizens of Illinois, are not pharmacists, and have no permit, but
import into Iowa beer which they sell in original packages, as de-
scribed.   Under our decision in *Bowman* v. *Chicago etc. Railway
Co.*, *supra*, they had the right to import this beer into that state,
and, in the view which we have expressed, they had the right to
sell it, by which act alone it would become mingled in the com-
mon mass of property within the state.   Up to that point of time
we hold that, in the absence of congressional permission to do so,
the state had no power to interfere by seizure, or any other action,
in prohibition of importation and sale by the foreign or non-resi-
dent importer."

The practical effect of this decision was to make the sale of in-
toxicating liquors, imported into the state in the original packages,
legal ; in other words, the state laws prohibiting the sale and the
keeping for sale of such property by the importer did not apply,
because congress had not signified its permission that they might
apply.   An easy way was thus suggested by which intoxicating
liquors could be sold in defiance of state legislation to the con-
trary.   In consequence of this result, congress promptly passed
(August 8, 1890) what is known as the " Wilson act," which pro-
vided " that all fermented, distilled, or other intoxicating liquors
or liquids transported into any state or territory or remaining there-
in for use, consumption, sale, or storage therein, shall upon
arrival in such state or territory be subject to the operation and
effect of the laws of such state or territory enacted in the exercise
of its police powers, to the same extent and in the same manner
as though such liquids or liquors had been produced in such state
or territory, and shall not be exempt therefrom by reason of being
introduced therein in original packages or otherwise."

This statute did not apply to the case of *Durkee* v. *Moses*, for the reason that the cause of action in that case arose before the statute was enacted; and the question presented in this case is whether the Wilson act so far modified the law as announced in *Leisy* v. *Hardin*, as to make valid the statute of this state, which is relied upon by the defendant and which was declared void in *Durkee* v. *Moses*. By the statute in question (P. S., *c.* 112, *s.* 19), " any person " is liable to fine and imprisonment who " shall within this state solicit or take any order for spirituous liquor to be delivered at any place without this state, knowing or having reasonable cause to believe that if so delivered the same will be transported to this state and be sold in violation of the laws thereof." If this statute has been revived by the act of congress so as to apply to the facts of this case, the plaintiffs cannot recover; otherwise they are entitled to judgment.

In *Rhodes* v. *Iowa*, 170 U. S. 412, 422, referring to the Wilson act the court say: " Undoubtedly the purpose of the act was to enable the laws of the several states to control the character of merchandise therein enumerated at an earlier date than would have been otherwise the case, but it is equally unquestionable that the act of congress manifests no purpose to confer upon the states the power to give their statutes an extraterritorial operation so as to subject persons and property beyond their borders to the restraints of their laws. If the act of congress be construed as reaching the contract for interstate shipment made in another state, the necessary effect must be to give to the laws of the several states extraterritorial operation, for . . . the inevitable consequence of allowing a state law to forbid interstate shipments of merchandise would be to destroy the right to contract beyond the limits of the state for such shipments."

In *In re Rahrer*, 140 U. S. 545, 564, it is said: " Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once upon arrival within the local jurisdiction."

It is thus seen that the Wilson act did not confer power upon the states to interfere with, or regulate, interstate commerce in intoxicating liquors by the passage of laws purporting to have an extraterritorial effect. And in accordance with this view the supreme court of Maine, in the recent case of *State* v. *Intoxicating Liquors*, 94 Me. 335, decided that while intoxicating liquor continues to be recognized by federal authority as a legitimate subject of interstate commerce, that clause of the Revised Statutes of

the state which declares that "no person shall knowingly bring into the state . . . any intoxicating liquor with intent to sell the same in the state in violation of law" must be held inoperative as repugnant to the constitution of the United States.

In *Ex parte Loeb*, 72 Fed. Rep. 657, decided in 1896, it was held that intoxicating liquors are a legitimate subject of commerce, and burdens upon interstate commerce therein cannot be justified under the police power of the state; and that the negotiations of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce, and a state statute which attempts to prohibit the solicitation within the state of orders for such goods, though their sale within the state is prohibited by an exercise of the police power, is a burden upon interstate commerce and is void. It is there said (*p.* 660): "The Wilson act itself does not relax the interstate commerce law with regard to intoxicating liquors until their arrival within the state, thus recognizing them as an article of commerce, legitimate until operated upon after arrival by the police power."

In view of these authorities, as well as of the internal evidence disclosed by an examination of the Wilson act, no reasonable doubt remains that this case must be governed by the decision in *Durkee* v. *Moses*. To hold that the agent committed a crime in soliciting the orders for the sale of spirituous liquors at that time in the state of Ohio, where the sale was legal, and that therefore the vendor cannot recover therefor, would be an unwarranted interference with interstate commerce which finds no justification in state legislation.

*Judgment for the plaintiffs.*

All concurred.