[L. A. No. 27222.   In Bank.   Aug. 20, 1964.]

GEORGE M. BREIDERT, as Executor, etc., et al., Plaintiffs and Appellants, v. SOUTHERN PACIFIC COMPANY et al., Defendants and Respondents.

William Katz for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones and Ralph J. Eubank, Assistant City Attorneys, Charles W. Sullivan and Arthur Karma, Deputy City Attorneys, E. D. Yeomans and Walt A. Steiger for Defendants and Respondents.

TOBRINER, J.—In this case of inverse condemnation we must decide whether a property owner who loses the use of the next intersecting street which affords him access to the general system of public streets should be compensated. As we point out, although the bare allegation of a cul-de-sac does not in itself suffice to establish a compensable right, a showing of a substantial impairment of the property owner's right of access to the system of public streets does so. Since the complaint in this case alleges such substantial impairment, it withstands a general demurrer.

Plaintiffs are, respectively, the owners, lessors and lessee of a parcel of improved real property located in the City of Los Angeles. Fronting on Vaughn Street, which runs in an easterly and westerly direction, the property is situated at the southeast corner of Vaughn and the right-of-way of the Southern Pacific Railroad, which runs north and south. Immediately to the west of the right-of-way and parallel to it, lies San Fernando Road. The property has been improved by a one-story factory building used for the manufacture of air-conditioning equipment.

At the time the plaintiffs acquired the property in 1953, and until 1959, Vaughn Street crossed the Southern Pacific right-of-way and intersected San Fernando Road. Plaintiffs and the public used this Vaughn Street crossing as a means of access to and from San Fernando Road. In April 1959 defendants placed barricades across Vaughn Street along the easterly and westerly lines of the right-of-way and closed the crossing.

We take judicial notice of the following facts, not pleaded in plaintiffs' amended complaint, but set forth in *In re G. C.*

*Breidert, Decision No. 61775* (1961) 58 Cal. P.U.C. 624 (unreported). By Decision Number 56398, March 25, 1958, the Public Utilities Commission authorized the City of Los Angeles to construct a grade crossing over the Southern Pacific right-of-way at Paxton Street, 1360 feet south of Vaughn Street, and ordered the Vaughn Street crossing closed. On November 17, 1959, the present plaintiffs requested the Public Utilities Commission to reopen the crossing, alleging that the closing resulted in hardship to the plaintiff company by depriving the company and its customers of access over the right-of-way at Vaughn Street.

After a hearing on plaintiffs' application the commission found that the Vaughn Street crossing ranked as 357th most hazardous of the approximately 4,500 crossings in Southern California. The commission concluded that "it is in the public interest, considering both safety factors and the needs of the [defendants] to have Vaughn Street closed and we now find that there is insufficient need for a crossing at Vaughn Street to justify the risk involved." On August 9, 1961, we denied plaintiffs' petition for writ of review of the Public Utilities Commission order. On March 30, 1962, plaintiffs initiated the present action for damages arising out of the closing of the crossing. The trial court sustained defendants' general demurrer to plaintiffs' amended complaint and entered judgments of dismissal as to both defendants. Plaintiffs appeal these judgments.

█ We initially dispose of two preliminary matters. First, defendants fail to sustain the contention that, since the Public Utilities Commission exercises exclusive jurisdiction to order the closing of railroad grade crossings, this court cannot adjudicate the present action. Plaintiffs do not seek an order to reopen the crossing; rather they demand damages for an invasion of a property right. The power to determine whether the plaintiffs have suffered a compensable invasion of their rights resides with the courts. (*S. H. Chase Lumber Co.* v. *Railroad Com.* (1931) 212 Cal. 691, 706 [300 P. 12]; *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 349 [144 P.2d 818].)

█ Second, defendant railroad erroneously urges that it is not a proper party defendant to the present action. Since defendant railroad was an active joint participant in closing the crossing, it is a proper party to the present litigation. (See *Talbott* v. *Turlock Irr. Dist.* (1933) 217 Cal. 504, 506 [19 P.2d 980]; *Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 621 [37 P. 750, 42 Am.St.Rep. 149].)

The principal issue of the case resolves into whether the closing of the Vaughn Street crossing so impaired plaintiffs' right of access in that street as to constitute a taking or damaging of property entitling them to compensation. Plaintiffs' claim rests upon the provision of the California Constitution that private property may not be taken or damaged for public use without just compensation (Cal. Const., art. I, § 14). Plaintiffs thus purport to state a cause of action in inverse condemnation.[1]

We have long recognized that the urban landowner enjoys property rights, additional to those which he exercises as a member of the public, in the street upon which his land abuts. Chief among these is an easement of access in such street. (*People* ex rel. *Dept. of Public Works* v. *Symons* (1960) 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451]; *People* v. *Russell* (1957) 48 Cal.2d 189, 195 [309 P.2d 10]; *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 349-350; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 397 [144 P.2d 799]; *Rose* v. *State* (1942) 19 Cal.2d 713, 727-728 [123 P.2d 505]; *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614, 617-618.)[2] This easement consists of the right to get into the street upon which the landowner's property abuts and from there, in a reasonable manner, to the general system of public streets. (See *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 351, 355; *People* ex rel. *Dept. of Public Works* v. *Ayon* (1960) 54 Cal.2d 217, 223 [5 Cal.Rptr. 151, 352 P.2d 519]; *Wolff* v. *City of Los Angeles* (1920) 49 Cal.App. 400, 405 [193 P. 862]; *Warren* v. *Iowa State Highway Com.* (1958) 250 Iowa 473 [93 N.W.2d 60, 67]; *Wilson* v. *Kansas City* (Mo. 1942) 162 S.W.2d 802, 804; *State* v. *Silva* (1963) 71 N.M. 350 [378 P.2d 595, 599]; see generally *Freeways and the Rights of Abutting Owners* (1951) 3 Stan.L.Rev. 298, 302.)

To designate the right, however, is not to delineate its precise scope. Not every interference with the property owner's access to the street upon which his property abuts and

---

[1] An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner. The principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action. (See *Rose* v. *State, supra,* 19 Cal.2d 713; *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343.)

[2] See also Streets and Highways Code, section 100.3 which provides that the construction of freeways ''shall not affect private property rights of access, and any such rights taken or damaged within the meaning of article I, section 14, of the State Constitution for such freeway shall be acquired in a manner provided by law.''

not every impairment of access, as such, to the general system of public streets constitutes a taking which entitles him to compensation. Such compensation must rest upon the property owner's showing of a *substantial impairment* of his right of access to the general system of public streets.

■  The determination of whether such substantial impairment has been established must be reached as a matter of law. The extent of such impairment must be fixed as a matter of fact. The cases have consistently held that the trial court must rule, as a matter of law, whether the interference with access constitutes a substantial or unreasonable impairment.[3] Thus in *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 402-403, we said: "It was . . . within the province of the trial court and not the jury to pass upon the question whether under the facts presented, the defendants' right of access will be substantially impaired. If it will be so impaired the extent of the impairment is for the jury to determine. This is but another way of saying that the trial court and not the jury must decide whether in the particular case there will be an actionable interference with the defendants' right of access."[4]

Substantial impairment cannot be fixed by abstract definition; it must be found in each case upon the basis of the factual situation.[5] "While certain general rules have been

[3]"Whether a substantial impairment of a property right exists is a question for the court to determine under all the facts of the case. Once this determination has been made, its extent is then determined by the jury." (Del Guercio, *Severance Damages and Valuation of Easements,* Cont. Ed. Bar, Condemnation Practice, ch. 4, p. 73.)

[4]A similar analysis occurs in other leading right of access cases. In *Rose* v. *State, supra,* 19 Cal.2d 713, 729, in finding that substantial impairment of access in the narrowing of an abutting street resulted from construction of a subway, we said: "The issues before the trial court in the case at bar were, whether plaintiffs' right of access . . . was *substantially and unreasonably impaired* . . . and if so, the amount of damage suffered as the result of such interference . . . ." (Italics added.) More recently, in *People* ex rel. *Dept. of Public Works* v. *Russell, supra,* 48 Cal.2d 189, which also involved the narrowing of an abutting road, we noted that the duty rests with the trial court to determine as a question of law, whether the property owner had suffered substantial impairment of access. Only if it so finds may it submit the question of damages to the jury. (See also *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614; *McCandless* v. *City of Los Angeles* (1931) 214 Cal. 67 [4 P.2d 139]; *Lane* v. *San Diego Elec. Ry. Co.* (1929) 208 Cal. 29 [280 P. 109].)

[5]As Witkin, Summary of Cal. Law, p. 2051, states, ". . . it is easier to state these propositions than to apply them."

set forth in the various decisions which have considered the nature and scope of this right, each case must be considered upon its own facts." (*People* v. *Russell, supra,* 48 Cal.2d at p. 195.)

Plaintiffs contend, however, that *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, compels a holding that owners, such as plaintiffs in the instant case, whose access to the next intersecting street in one direction is severed, suffer substantial impairment as a matter of law. The holding in *Bacich* is not so broad. *Bacich* arose upon a demurrer to the plaintiff's complaint alleging that plaintiff should recover damages because a street improvement deprived him of access to the next intersecting street in one direction. The court decided only that a complaint which alleges impairment of access to the next intersecting street in one direction does not succumb to a demurrer by reason of that allegation. The court recognized that although the right of access consists essentially of a right to get into the street upon which one's property abuts, and to travel in a reasonable manner from there to the general system of public streets (23 Cal.2d at pp. 351, 355), it *also includes* a "right to pass to the next intersecting streets." (*Id.* at p. 352.) The court declared, "It would seem clear that the reasonable modes of egress and ingress would embrace access to the next intersecting street in both directions." (*Id.* at p. 352.)

The recognition that the easement of access includes a right not only to reach the general system of public streets, but to do so over either of the next intersecting streets in two directions, does not mean that in every case an allegation of impaired access to the next intersecting street in one direction will establish a compensable right. It will not constitute an "unreasonable interference" in the words of *Rose* v. *State, supra,* 19 Cal.2d at page 727, with the general right of access to the system of public streets. Nor as to such access does it effect, as described in *People* v. *Ricciardi, supra,* 23 Cal.2d at page 398, a "substantial impairment" of that right. Loss of access to the next intersecting street will be a significant factor in finding an impairment of the general right; and, as *Bacich* held, obstruction of access to the next intersecting street serves as one element of such impairment.

The court's statement in *Bacich* that not every cul-de-sac case is compensable supports this analysis. Thus at page 355, we acknowledged that, "One might imagine many circumstances . . . in which recovery should not be permitted or where the reasons for recovery in the cul-de-sac cases might

not be logically applied, but we are here concerned with the particular facts of this case and do not purport to declare the law for all cases under all circumstances.''

Moreover, the court's reliance in *Bacich* upon such cases as *Rose* v. *State, supra,* 19 Cal.2d 713, *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614, *McCandless* v. *City of Los Angeles, supra,* 214 Cal. 67, and *Lane* v. *San Diego Elec. Ry. Co., supra,* 208 Cal. 29, all of which affirm the proposition that recovery depends upon a showing of substantial impairment of the general right of access, supports this reading of *Bacich.*

That loss of access to the next intersecting street does not necessarily create a cause of action for impairment of the general right of access is further recognized by our recent holding in *People* ex rel. *Dept. of Public Works* v. *Symons, supra,* 54 Cal.2d 855. In *Symons* defendant landowners appealed from a judgment limiting severance damages in an eminent domain proceeding involving the acquisition of a portion of defendants' residential property to convert the terminus of the street upon which it abutted into a cul-de-sac and thus provide a turn-around area. Creation of the cul-de-sac severed defendant's access to the next intersecting street in one direction. We affirmed the trial court's denial of damages for injury to defendants' remaining land on the ground that the improvement which caused the loss, that is the freeway itself, did not lie upon the property taken from plaintiff. (*People* ex rel. *Dept. of Public Works* v. *Symons, supra,* 54 Cal.2d at p. 861.)

We affirmed the exclusion of expert testimony regarding the decrease in value of defendants' property caused by ''such factors, among others, as the change from a quiet residential area, loss of privacy, loss of view . . . noise, fumes and dust from the freeway, *loss of access over the area now occupied by the freeway,* and misorientation of the house on its lot after the freeway construction.'' (*Id.* at p. 858; italics added.) We concluded that in the absence of a right to severance damages this testimony related to noncompensable items of damage. Thus we denied recovery because defendants' bare showing that their property was placed in a cul-de-sac did not of itself satisfy the requirement of substantial impairment of access.[6]

In summary, the rule which emerges constitutes one

---

[6]The implications of *Symons* have not gone unnoticed. In *Rosenthal* v. *City of Los Angeles* (1961) 193 Cal.App.2d 29 [13 Cal.Rptr. 824], the

of substantial impairment of the right of access. Although destruction of access to the next intersecting street in one direction constitutes a significant factor in determining whether the landowner is entitled to recovery, it alone cannot justify recovery in the absence of facts which disclose a substantial impairment of access.

■ We turn next to the application of the test of substantial impairment to the facts of the present case. Plaintiffs claim that the closing of the Vaughn Street crossing substantially impaired their right of access. They allege that "Loss of access to San Fernando Road from Vaughn Street, and from San Fernando Road to Vaughn Street, has substantially lessened and seriously impaired the free and full use by plaintiffs of their property." Their complaint alleges the serious impact of this loss of access upon the plaintiff's real property. Thus the complaint sufficiently pleads a loss sufficient to withstand defendants' general demurrer.

■ We note, however, that certain of the complaint's allegations incorporate items of possible damage wholly immaterial to a cause of action for impairment of the easement of access. Thus plaintiffs' claims of lost good will and inability to obtain employees, insofar as they relate to loss of business rather than diminution of the value of plaintiffs' real property, do not constitute legitimate elements of damage.[7]

■ Plaintiffs also complain that "the closing of Vaughn Street requires trucks servicing the property of plaintiffs, and other industries along Vaughn Street, to use Bradley

---

city rerouted Roscoe Boulevard, the street upon which plaintiff's property abutted, causing it to bypass plaintiff's premises, and leave them on a short street closed at both ends. Formerly plaintiff had access to his property over Roscoe Boulevard from the east and over two streets intersecting Roscoe from the north; after the improvements access was limited to the two intersecting streets. In denying plaintiff recovery for impairment of his right of access the court stated: "The clear command of [Symons] . . . is that . . . diminished value attributable to the diminished access due to a public improvement on neighboring property is not compensable. *It may be noted that in Symons there was even a loss of access to the next intersecting street.*" (*Id.* at p. 33; italics added.)

[7]*People* v. *Ricciardi, supra,* 23 Cal.2d 390, 396, states the rule as follows ". . . injury to the business of the owner or occupant of the property does not form an element of the compensating damages to be awarded [citation]. This is so because it is only the value of, and the damage to, the property itself, which may be considered. A particular business might be entirely destroyed and yet not diminish the actual value of the property for its highest and best use." (See *Holloway* v. *Purcell* (1950) 35 Cal.2d 220, 230 [217 P.2d 665]; *People* v. *Sayig*

Avenue to Paxton Street; said Bradley Avenue is a narrow, residential street and the use of the same by heavy trucks is dangerous and adverse to the best interests of the public using the same; if said Vaughn Street crossing is permitted to remain obstructed and closed, the access to the property of said plaintiffs by fire, police and other public services, in the event of emergencies, will be greatly impaired and delayed.''

The first of these contentions relates to matters already considered fully by the Public Utilities Commission (*In re G. C. Breidert, Decision No. 61775, supra,* 58 Cal. P.U.C. 624 (unreported)), and in any event injury to the public does not establish a compensable loss to a private landowner unless he is thereby specially injured. (E.g., *Eachus* v. *Los Angeles etc. Ry. Co., supra,* 103 Cal. 614.) The second contention refers to matters too speculative to produce a compensable loss.[8] (See *Rose* v. *State, supra,* 19 Cal.2d 713, 738.)

At a time when the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, the claimed damages to property owners from loss of access to the next intersecting street and to the general system of streets must be more than formal. It must be a true loss; it must be substantial.

The judgments are reversed with instructions to overrule the general demurrers and to permit the parties to proceed in a manner consistent with this opinion.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.

TRAYNOR, J., Concurring.—Although I adhere to the views set forth in my dissenting opinion in *Bacich* v. *Board of Control,* 23 Cal.2d 343, 366-380 [144 P.2d 818], that case is the law of this state until it is overruled. I therefore concur in the judgment herein under the compulsion of the *Bacich* case.

---

(1951) 101 Cal.App.2d 890 [226 P.2d 702]; *City of Los Angeles* v. *Geiger* (1949) 94 Cal.App.2d 180, 191 [210 P.2d 717]; *Wolff* v. *City of Los Angeles* (1920) 49 Cal.App. 400, 402 [193 P. 862]; *Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 399 [153 P. 705].)

[8]Plaintiffs also claim damages for the taking of an easement over the Vaughn Street crossing and for maintenance of a nuisance. Plaintiffs have no property right in the public crossings (see *City of San Mateo* v. *Railroad Com.* (1937) 9 Cal.2d 1 [68 P.2d 713]) and plaintiffs state no cause of action for maintenance of a nuisance unless they show that they have been specially injured (see *Bigley* v. *Nunan* (1879) 53 Cal. 403).