634

[Civ. No. 8772.   Fourth Dist., Div. One.   May 31, 1968.]

THE  PEOPLE  ex  rel.  DEPARTMENT  OF  PUBLIC
WORKS,  Plaintiff  and  Respondent,  v.  RALPH  E.
BECKER et al., Defendants and Appellants.

Thorpe, Sullivan, Clinnin & Workman and Henry K. Workman for Defendants and Appellants.

Fadem & Kanner, Goldstein, Barceloux & Goldstein, Desmond, Miller, Desmond & West, Bressani, Hansen, Shuh & Blos, Thomas G. Baggot, Jr., Anson & Gleaves and Gideon Kanner as Amici Curiae on behalf of Defendants and Appellants.

Harry S. Fenton, Richard G. Rypinski, Sherman E. Hollingsworth, Dale Peterson and Robert W. Vidor for Plaintiff and Respondent.

WHELAN, J.—Defendant property owners appeal from a judgment in condemnation insofar as the judgment denied any severance damages.

### STATEMENT OF FACTS

Defendants' property before the taking was an irregularly shaped parcel containing 1.52 acres. The property fronted on Interstate Highway 8, sometimes known as Highway 80. The property was improved with a service station and its auxiliary improvements plus a one-story house and garage. Parcel 1, the part taken, has an area of .14 acres, and the property remaining to defendants has an area of 1.38 acres.

The property taken has become a part of the right-of-way of the state highway on which defendants' remaining property now fronts. That highway is now a frontage road that connects at both ends with Interstate 8 in its new location to the north. The southerly line of the new right-of-way of the frontage road passes through the service station improvements and all such improvements touched by the line were acquired by the state.

In the before condition, defendants had access to the right-of-way of the old State Highway 80 all along the frontage of their property. In the after condition they have access to the frontage road, which is slightly offset from where the old highway was. If one were to leave the property he would travel approximately 1,000 feet westerly on the frontage road until he reached an overcrossing (West Willow Road Interchange), at which point he could go on the freeway eastbound or cross over the freeway and go on the freeway westbound. He might also travel on the frontage road eastward a distance of 2¾ miles to reach another interchange where he would be able to go on the freeway eastbond or westbound. In order to reach defendants' property from the freeway, a traveler going west would pass the property and leave the freeway at the West Willow Road Interchange and then cross over the freeway and come back to the property on the frontage road. A traveler proceeding east on the new highway would get off at the same interchange and proceed easterly on the same frontage road to the property. If he did not leave Interstate 8 at the West Willow Road Interchange, the eastbound traveler would continue east 2¾ miles to the next interchange and then come back west the same distance on the frontage road.

The highest and best use of defendants' property before the taking was much the same use as that being made of it at the

time of the taking: namely, service station and residential use, with the probability of expansion of the residential use by rental units.

After the taking, the highest and best use of defendants' property is for residential purposes only. It will no longer be suited for many commercial uses and its highest use will not be for a service station. This is because of its distance from the through highway. Prior to the taking, defendants' property had a frontage of 226.49 feet on the right-of-way; after the taking, the remaining property had a frontage of 222.48 feet on the right-of-way.

The width of the pre-existing paved roadway was approximately 22 feet within a 100-foot right-of-way of which a width of approximately 40 feet separated the paved roadway from defendants' property line. There was, however, a section of concrete pavement within the right-of-way forming a part of defendants' service station improvements.

After construction of the improvement, the paved roadway is 24 feet wide with an 8-foot shoulder which is separated from defendants' remaining property by a strip about 7 feet wide; to the north of the paved roadway there is another strip approximately 7 feet wide, then a chain-link fence; the right-of-way of the relocated Interstate 8 is to the north of the fence, within which right-of-way is a paved roadway 24 feet wide for eastbound traffic and separated from it by at least 100 feet a similar paved roadway for westbound traffic.

It appears from maps in evidence that before the taking there was on Interstate 8 no intersecting north-south public highway between the point where West Willow Road Interchange is now located and the nearest interchange east of defendants' property; that the only highway joining Interstate 8 within that stretch was West Willow Road itself which went off from Interstate 8 in a northeasterly direction and rejoined the main highway where the next interchange of the new freeway is to the east of defendants' property.

It does not appear, nor is it claimed, that the view of defendants' property even from the freeway in that section within the northerly extensions of the easterly and westerly boundaries of defendants' property is destroyed by the taking or construction.

After hearing testimony as to the amount of severance damage and the factors upon which it was premised, the trial

court struck out that testimony. That testimony was as follows:

"A. The remaining property, in my opinion, no longer has the same utility or potential uses as the property had before.

". . . . . . . . . . . . .

"A. The access to the highway, freeway, main highway has been impaired. That is the princip*le* reason, of course. The expression that I used or intended to use, site value, is another element. That refers to the ability of persons on the highway, the main highway, to recognize the place, see the place and know it is there.

". . . . . . . . . . . .

"A. Yes, but the property in the before condition had access to the Highway, the major highway. The only highway. In the after condition, it is separated from the main through highway.

". . . . . . . . . . . .

"A. You would have to travel under the present proposed construction, you would have to travel what is called the West Willow overpass or interchange, I should say, which is, oh, possibly eleven hundred feet west of the property.

". . . . . . . . . . . .

"A. It impairs the access inasmuch as the person traveling on the highway who wants to get to this particular point, the Becker property, has to go—move to an interchange, and reach the outer highway and travel by that, to the Becker property. It can not go directly from the highway to the Becker property, that is the distinction." The property will not have its highest use for a service station in the after condition "because of this difficulty getting to the through highway."

### CONTENTION ON APPEAL

The sole contention on appeal is that the trial court erred in finding that there was no substantial impairment of defendants' easement of access to the through highway that is now a freeway known as Interstate 8.

Their arguments are based largely upon alleged similarities between the facts of the present use and those in such cases as *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799]; *Blumenstein* v. *City of Long Beach,* 143 Cal.App.2d 264 [299 P.2d 347]; *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659 [39 Cal. Rptr. 903, 394 P.2d 719]; *Valenta* v. *County of Los Angeles,* 61 Cal.2d 669 [39 Cal.Rptr. 909, 394 P.2d 725]; *Rose* v. *State*

of *California,* 19 Cal.2d 713 [123 P.2d 505] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818] ; and *People* ex rel. *Dept. Public Works* v. *Giumarra Vineyards Corp.,* 245 Cal. App.2d 309 [53 Cal.Rptr. 902].

Of those cases *Bacich* v. *Board of Control, supra, Breidert* v. *Southern Pac. Co., supra,* and *Valenta* v. *County of Los Angeles, supra,* were all appeals from judgments based upon orders sustaining demurrers; they did not involve, therefore, a claim of error based upon a trial court's determination that no substantial impairment of the easement of access had been shown.

While that determination has been said to be a matter of law, it is in truth a mixed question of law and fact. (See *People* ex rel. *Dept. of Public Works* v. *Wasserman,* 240 Cal. App.2d 716 [50 Cal.Rptr. 95].)[1] It is in any event a question to be determined by the trial judge as a preliminary to submitting to the jury the question of the amount of damage if the court should have decided there was substantial impairment.

In *People* v. *Ricciardi, supra,* 23 Cal.2d 390, there are four factors that are absent from the present case, the materiality of which will be discussed separately. The construction there was in part an underpass on one of two heavily traveled streets at the intersection of which defendants' property was situated; the underpass, 17 feet below grade at its lowest point, immediately west of that property, cut off all visibility of the property along the entire width of the property; secondly, the underpass was partly constructed on the property taken from defendant; thirdly, the property was in a highly urbanized area; fourthly, the trial judge determined there had been substantial impairment of the easement of access.

In *Blumenstein* v. *City of Long Beach, supra,* 143 Cal.App. 2d 264, the plaintiff's property was completely cut off from one of the two streets on which it had faced as the result of

---

[1]"The issues before the trial court in the case at bar were, whether plaintiffs' right of access to Jackson Street was substantially and unreasonably impaired by the construction of the subway, and if so, the amount of damage suffered as the result of such interference. These matters are for the trier of the facts and only where the evidence does not support a finding of substantial and unreasonable interference should the court decide the issue as a matter of law." (*Rose* v. *State of California,* 19 Cal 2d 713, 729 [123 P.2d 505].)

the intrusion of the off-ramp of a freeway between his property and the traveled portion of that street.

In *People* ex rel. *Dept. Public Works* v. *Giumarra Vineyards Corp., supra,* 245 Cal.App.2d 309, defendants' only means of access to any highway was cut off and replaced by another at the opposite end of plaintiff's 356-acre tract and distantly removed from its packing shed.

In *Rose* v. *State of California, supra,* 19 Cal.2d 713, a subway under railroad tracks was constructed, the downward approach to which extended the full length of plaintiff's 118-foot frontage on what had been a 66-foot-wide street crossing the tracks; as a result of the construction, plaintiff's property was accessible only by a 14.5-foot lane between the subway wall and the sidewalk, and which came to a dead end at the railroad tracks.

It may be well to note that in *Breidert, supra,* and *Valenta, supra,* the construction cut off the plaintiff's property from access in one direction that it had had along its frontage street to an intersecting street, thus making the frontage street a dead end; that was also the situation in *Bacich, supra. Valenta, supra,* had the additional feature of applying the cul-de-sac rule to non-urban property.

When a public improvement causes special and peculiar damages to the abutting property, the owner is entitled to compensation for such damage. (*McCandless* v. *City of Los Angeles,* 214 Cal. 67, 72 [4 P.2d 139]; *Zobelein Co.* v. *City of Los Angeles,* 6 Cal.App.2d 29 [43 P.2d 818].)

Substantial impairment of the abutting landowner's right of direct access to the adjoining highway may give rise to such special and peculiar damage. (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663-664; *People* v. *Ricciardi, supra,* 23 Cal.2d 390.)

The fact that property abutting on a street is zoned for business purposes and is located in a busy commercial area enters into a determination whether impairment of the right of access is substantial. (*McCandless* v. *City of Los Angeles, supra,* 214 Cal. 67; *Zobelein Co.* v. *City of Los Angeles, supra,* 6 Cal.App.2d 29; *People* v. *Loop,* 127 Cal.App.2d 786 [274 P.2d 885].)

In some circumstances the convenience of access by vehicular traffic and in others by pedestrian traffic will be important in determining whether "special and peculiar damages" have been caused.

It is only if the free and convenient access of the landowner is substantially impaired that he has a cause of action. (*Genazzi* v. *County of Marin,* 88 Cal.App. 545 [263 P. 825]), even though the action of the public body may impede the convenience with which ingress and egress may thereafter be accomplished and may necessitate circuity of travel to reach a given destination. (*People* v. *Ayon,* 54 Cal.2d 217, 223-224 [5 Cal. Rptr. 151, 352 P.2d 519].)

■ The easement of access includes the right to get into the street upon which the landowner's property abuts and from there, in a reasonable manner, to the general system of public streets. (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663.)

The right has been defined as that of reasonable use of the street fronting the property in either direction to the next intersection. (*Rose* v. *State of California, supra,* 19 Cal.2d 713; *Beckham* v. *City of Stockton,* 64 Cal.App.2d 487, 503 [149 P.2d 296].)

There is impairment of the right of access when a two-way street on which property fronts is closed in one direction at or before the point of junction of the nearest intersecting street in that direction. (*Bacich* v. *Board of Control, supra,* 23 Cal.2d 343.)

The rule that the creation of such a cul-de-sac is a substantial impairment of the right of access applies with regard to non-urban property. (*Valenta* v. *County of Los Angeles, supra,* 61 Cal.2d 669.)

■ One of the elements that may impair the right of access is the curtailment of the visibility of the property involved from the abutting street, as a result of the construction upon the property taken (*People* ex rel *Dept. of Public Works* v. *Wasserman, supra,* 240 Cal.App.2d 716); perhaps limited to such curtailment when abreast of the property. (*People* ex rel. *Dept. of Public Works* v. *Stevenson & Co.,* 190 Cal.App.2d 103 [11 Cal.Rptr. 675].)

■ The diversion of traffic is not a proper element to be considered in computing damages inasmuch as a landowner has no property right in the continuation or maintenance of the flow of traffic past his property. (*Rose* v. *State of California, supra,* 19 Cal.2d 713, 737; see also *Beckham* v. *City of Stockton, supra,* 64 Cal.App.2d 487, 502.)

The following quotation from *People* v. *Gianni,* 130 Cal.

App. 584, 588-589 [20 P.2d 87], is very apt: "No matter how we shape the facts in the instant case, the claim of damage rests wholly upon the relocation or removal of the highway. All that defendant suffers from the taking is the small area taken, for which he is compensated. . . . The injury causing the claimed damage is the change of route. This damage results regardless of whether or not the small portion of land is taken. Given an injury the damage from which is neither lessened nor aggravated by the taking, we must conclude the taking causes no damage."

In *Gianni, supra,* the fact as stated in the opinion was: "This tract had a highway frontage of some nineteen hundred feet and on the frontage had been maintained certain business establishments. This frontage on a main highway gave to the entire area a market value which otherwise it would not have. The plaintiff state, acting through its authorized department, determined upon a relocation of the main highway. The plan adopted was to route travel over a new road though the former road was neither closed nor abandoned. The new highway left the lands of defendant with no frontage thereon and did lessen the rental value of his premises and beyond question diminished the value of his remaining area." (P. 585)

Applying the principles enunciated to the facts in the case at bench, the ineluctable conclusion is that any depreciation in the value of defendants' property results from the partial re-routing of Interstate 8 and its creation into a freeway with rights of limited access; but defendants' right of access to the highway fronting his property has not been substantially impaired; the minor unevennesses in the levels of the right-of-way with relation to the property are no greater than might be caused by the installation of curbs, of which defendants could not complain; the traveled road in front of their property is as easily accessible as it was; there has been a realignment of the right-of-way resulting from the taking so as to form a right angle with defendants' east and west lines; the paved roadway is wider than before; while the right-of-way itself is narrower, defendants could never have had the absolute right to use all of its width for travel since a part of its width might be used for such things as flood control; it may be slightly more inconvenient for defendants to get onto the through highway to San Diego or El Centro. but the distance traveled to reach either of those places will not have been increased appreciably; there are no intersecting

streets to which approach has been cut off; there is no loss of visibility of defendants' property from the road in front of it; if it is not easily visible from the freeway that has resulted because of the distance from the freeway and not from any obstruction caused by the improvement.

Any loss of utility for service station purpose derives not from the reduction in size caused by the taking but from the reduced flow of traffic that in turn has resulted not from the construction of the improvement on the property taken but from the creation of the freeway.

The trial court correctly determined that there had not been any impairment of defendant's right of access.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.