[Civ. No. 11974. Third Dist. Mar. 12, 1970.]

GARY OLSON et al., Plaintiffs and Appellants, v.
COUNTY OF SHASTA, Defendant and Respondent.

**COUNSEL**

Jack Halpin for Plaintiffs and Appellants.

Robert A. Rehberg, County Counsel, W. Leonard Wingate, Deputy County Counsel, and Clyde Small for Defendant and Respondent.

**OPINION**

**REGAN, J.**—In this action a group of 10 individual owners of residential real property on Cheryl Drive, Redding, California, joined together in a

single action on the theory of inverse condemnation seeking damages against Shasta County. They allege each suffered varying amounts of damage resulting from road and drainage improvements constructed by the county which were a contributing cause of damage during a storm on April 9, 1966.

A jury returned a verdict for defendant county and against plaintiffs on all of plaintiff's separate claims for specific damages. However, the jury found for the plaintiffs jointly in the sum of $31,000 as the cost "of remedying the situation for the plaintiffs."[1]

Thereafter, defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The trial court granted a judgment notwithstanding the verdict in favor of defendant and denied the motion for a new trial. Plaintiffs appeal.

Cheryl Drive is a street which is minimal in terms of today's standards, being deficient in both roadway width and drainage. It begins at an intersection with and on the west side of Bechelli Lane, and from there runs downhill with a slight grade in a southerly direction and nearly parallel to Bechelli Lane. It was privately constructed in 1948 as part of a new residential subdivision. The properties are within a drainage basin which since 1959 has been subjected to continuous residential growth. The county in 1964 and 1965 designed and supervised street widening in the area and installed some drainage facilities including pipe conduits, one of which ends at an outlet structure (bubble box) which directs the flow of water into a ditch along Cheryl Drive, which ditch had been constructed by the property owners.

On April 9, 1966, a short, localized storm of high intensity hit the Cheryl Drive area causing flooding. The storm was described as. a 25-year storm. The intensity of the storm caused the drainage facilities to overflow and damage the plaintiffs' property. Much of the damage was done to landscaping surrounding the houses, but other damage was incurred by water flowing underneath and around the foundations of the houses. The estimates of damages by the property owners to their individual properties ranged from $100 to $3,000.

Donald Chamberlin, who was director of public works for the county at the time this event occurred, tesified that preliminary engineering studies had been made to continue the storm drain on down Cheryl Drive and over a bluff, and then to release the water in ponds. Chamberlin stated that the

---

[1]In a pretrial conference order it is stated: "The plaintiffs also announced at the pretrial conference that it was their election to proceed herein on a cost of cure basis of proving damages plus special damages suffered."

estimate made at the time for continuation of the storm drain was $31,000. At one point this amount was included in the county budget, but the work was never done.

■ Article 1, section 14, of the California Constitution provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . . ." This constitutional provision guarantees that a landowner whose land is not formally appropriated for a public use, but is damaged by a public improvement has a cause of action against the public entity to recover for the damage suffered.

■ In order to recover plaintiffs must prove their property has been taken or damaged for public use. The crux of this contention is whether or not the damage to the property was "proximately caused" by the public improvements. (See *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129].) As noted by one author, this "qualification—requiring that the damage be proximately caused by the public improvement as designed and constructed—involves a troublesome conceptual premise." (Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J. 431, 435.) But as that author also notes (at p. 436), with supporting citations, proximate cause "requires a convincing showing of a 'substantial' cause-and-effect relationship which excludes the probability that other forces alone produced the injury."

■ Here, the Cheryl Drive area was inundated by a single storm of high intensity, of brief duration, covering a relatively small geographical area. The trial court in granting judgment notwithstanding the verdict stated he did so on the ground the evidence was insufficient to support the jury verdict. We agree the trial judge was correct in so finding.[2]

. Plaintiffs contend that the wo verdicts reached by the jury, namely (1) the verdict for defendant against plaintiffs on all claims for damages and (2) the verdict as the cost "of remedying the situation for the plaintiffs" were not inconsistent merely because the jury found against the plaintiffs

---

[2]We call attention to the statement of plaintiffs' counsel in appellants' opening brief:

"There was testimony regarding flooding on at least five different occasions: December, 1964 (R.T. 66, 86, 142, 147, 151, 162, 169, 183); April of 1966 (R.T. 66, 134, 151, 157, 162, 178, 192); December of 1966 (R.T. 71, 196); November 1966 (R.T. 104, 161, 167, 207), the winter of 1965 (R.T. 207, 212).

"Evidence as to *damage* was offered only as to the April, 1966 storm and subsequent flooding. This, in all instances, was the owner's estimate of time spent removing mud, etc.

"Defendant called but one witness, a civil engineer experienced in hydrology. This witness explained, 'ten-year twenty five-year one thousand-year' storms. This witness classified the April 1966 storm as a 'hundred-year storm'.

individually but for the plaintiffs collectively. Plaintiffs argue that though the jury considered the April 9, 1966, storm as Act of God, the jury could quite properly find that the county improvements did contribute to past damage and would contribute to *future* flood damage and therefore should be corrected at the cost estimated by the county. Plaintiffs liken this sort of situation to a proceeding by a public body in eminent domain and thus argue that the action must be tried *before* the anticipated damage occurs. (See, e.g., *People* v. *Ricciardi* (1943) 23 Cal.2d 390 [144 P.2d 799].)

■ An action in inverse condemnation, however, is generally available only where the taking results in property damage or destruction or other depreciation in market value or unlawfully dispossesses the owner. (Cal. Condemnation Practice (Cont. Ed. Bar), § 9.16, pp. 177-178.) The very definition of a "taking" requires an "act" (p. 178), and the risk of future flooding is not an act.

Plaintiffs argue that if the two verdicts reached by the jury were inconsistent, the inconsistency should have been resolved by the jury. (See Code Civ. Proc., § 619.) It is not clear what the point of this argument is. Plaintiffs received precisely what the main thrust of their case appeared to be, i.e., a so-called "joint judgment" for extending the drainage facilities. The jury was so instructed that they could return such a verdict, and the verdict covered the issue submitted. Furthermore, plaintiffs make no suggestion as to exactly how the jury was to resolve the verdicts, assuming they were inconsistent, and no objection was made by plaintiffs at the time. (See *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063].)

"It is perfectly obvious that the jury considered the April 1966 storm as an Act of God. To put it another way, the jury found that the County was not responsible for the damage caused by the effects of the April, 1966 storm because the County was not required, in the view of the jury, to provide drainage facilities needed but once a century. But the jury just as clearly found that the improvements made by the County contributed to past and *future* flood damage and should be corrected at the cost estimated by the County. Are there any cases holding that an inverse condemnation action is premature because all the damage of the taking has not occurred? No, because literally every condemnation action is filed and most tried before the anticipated damage occurs. *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799]. The taking or damaging of private property for a public purpose is not always accompanied or preceded by condemnation proceedings. This omission may be due to the public bodies mistaken assumption that the act is one exercised under the police power, or that any damage is compensable in a tort action. *Condemnation Practice (Cont. Ed. Bar)* p. 177.

"A 'taking' of property includes an act — here the widening of Bechelli Lane and the placing of a 24-inch drain down to Cheryl Drive — that permanently or temporarily deprived the owner of the property's use. *Pacific Tel. etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119]. Finally, the jury could have found the damage of the 1966 flood caused in part by the County, was deminimis, but the risk of future floods diminished the value of plaintiffs' property by the cost of curing the defect, estimated at thiry-one thousand dollars by the County."

Plaintiffs next argue that "cost of cure" is a proper measure of damage caused by inverse condemnation. This contention appears to be the focal point of this case.

Plaintiffs rely on two cases, the first being *County of Butte* v. *Boydston* (1883) 64 Cal. 110 [29 P. 511]. In this case the county intended to condemn a strip of property through defendant's farm for a road in such a way as to make it necessary for him to fence his remaining land. The court held that the cost of fencing the remainder of defendant's property after a partial taking by plaintiff was a proper element in determining the total amount of damage.

The second case, *Dunbar* v. *Humboldt Bay Municipal Water Dist.* (1967) 254 Cal.App.2d 480 [62 Cal.Rptr. 358] (a decision of this court), involved the increase in the flow of a river which impeded plaintiff's access to his summer home. Plaintiff testified that he was compelled to expend several thousand dollars to buy and to adapt and equip a four-wheel-drive automobile in order to ford the river. He also gave estimates of the cost of adopting an alternate route. The evidence was stricken by the trial court. This court stated (at p. 489): "The damages recoverable here must be a measure in money of the diminution in value of appellant's property caused by respondent's invasion of his rights. But the evidence stricken was relevant and material as aiding the court in evaluating appellant's loss and should have remained in the case."

When these cases are subjected to scrutiny, it will be seen that they do not further plaintiffs' cause but are merely facets of the general rule in assessing damages in eminent domain and inverse condemnation cases. (See *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1 [39 Cal.Rptr. 903, 394 P.2d 719].)

■ The measure of damages is the decrease in market value of the property. (*People* v. *Hayward Bldg. Materials Co.* (1963) 213 Cal. App.2d 457, 465 [28 Cal.Rptr. 782]; *Dunbar* v. *Humboldt Bay Municipal Water Dist., supra,* 254 Cal.App.2d at p. 489; 1 Orgel on Valuation Under Eminent Domain, § 46, p. 222.) ■ While cost of replacement or restoration of improvements ("cost of cure") may be relevant evidence on the issue of damages (*People* v. *Hayward Bldg. Materials Co., supra,* 213 Cal. App.2d at p. 465), it is not a measure of damages to be separately assessed without reference to the loss in fair market value of the property taken or damaged. (*People* v. *Hayward Bldg. Materials Co., supra,* 213 Cal. App.2d at pp. 465-466; *Dunbar* v. *Humboldt Bay Municipal Water Dist., supra,* 254 Cal.App.2d at p. 489; *Steiger* v. *City of San Diego* (1958) 163 Cal.App.2d 110, 117-118 [329 P.2d 94].)

■ The accepted use of the cost-to-cure theory is restricted to repairing or reproducing improvements on the land of the individual whose property has been taken or damaged. (See e.g., *County of Butte* v. *Boydston, supra,* 64 Cal. 110; *Dunbar* v. *Humboldt Bay Municipal Water Dist., supra,* 254 Cal.App.2d at p. 489.) ■ In the case before us, however, plaintiffs attempted to force the county to construct drainage facilities beneficial to plaintiffs and adjacent to their property. Thus, the cost-to-cure evidence was used *not as a factor in ascertaining loss in market value* (cf. Evid. Code, § 820), *but as a complete theory in and of itself.* The case was so tried, the jury so instructed,[3] and verdict forms furnished therefor. We hold the trial court erred in allowing and following this approach.

Plaintiffs also allege that a joint judgment for damages in inverse condemnation is proper. However, they cite only general code sections and no decisional authority. (See, e.g., Code Civ. Proc., §§ 578, 1048 and 1244.) On the other hand, section 1248 of the Code of Civil Procedure expressly provides that if the property consists of different parcels, the value of each parcel must be separately assessed.

We therefore conclude that as to the cost-to-cure theory, the court erred in so instructing the jury and affording them a verdict on this theory. There was no doubt the jury was confused. There is also little doubt that the jury predicated its verdict of $31,000 on the testimony of Chamberlin who stated that the estimate for continuation of the storm drain was $31,000. Nevertheless, we think the trial court eventually reached the proper result. We find the record totally lacking in evidentiary support to establish that the improvements, as designed and constructed, proximately caused the damages alleged herein. There is here no showing of a substantial cause-and-effect relationship excluding the probability that other forces alone produced the injury. (See Van Alstyne, *supra,* p. 436.) ■ In the end result, "[i]t is judicial action and not judicial reasoning which is the subject of review." (*El Centro Grain Co.* v. *Bank of Italy, etc. Assn.* (1932) 123 Cal.App. 564, 567 [11 P.2d 650].) Thus, although we think the case was tried on an improper theory, we find the trial court reached a proper conclusion in granting a judgment notwithstanding the verdict.

---

[3]The jury was instructed as follows:

"One method of determining just compensation is to estimate the cost of reproducing improvements, if the improvements would enchance the value of the property. The property owners are entitled to be paid for any reasonable expenditures which they make, or might have to make in the future, in an attempt to minimize any damages caused by the public improvement.

"This method of cost of reproducing improvement is only applicable if you find from the evidence in this case that the activities of the County has created a condition whereby the flooding of the plaintiffs' property can reasonably be anticipated to continue in the future, and will recur in the same degree as the flooding of April 9th, 1966."

The purported appeal of defendant, filed for procedural purposes, is dismissed as being moot.

The judgment is affirmed. Respondent is to recover costs on appeal.

Friedman, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied April 8, 1970, and appellants' petition for a hearing by the Supreme Court was denied May 6, 1970.