[Civ. No. 27407. First Dist., Div. One. May 13, 1971.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
ROSE ROMANO, Defendant and Appellant.

64

**COUNSEL**

Thorne, Stanton, Clopton, Herz & Stanek, Thorne, Clopton, Herz & Stanek and John E. Thorne for Defendant and Appellant.

Harry S. Fenton, John P. Horgan, J. Dennis Sullivan, William R. Edgar and Donald M. Velasco for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendant appeals from that portion of the judgment in a condemnation proceeding brought by plaintiff which adjudged that defendant was not entitled to severance damages.[1] The issue on appeal is whether the trial judge erred in determining that defendant had not suffered a substantial impairment of access as a result of the taking of a portion of her property.

By the instant eminent domain action plaintiff sought to acquire a portion of defendant's property for the purposes of an improvement related to a state highway. In the before condition defendant's property, an unimproved parcel of property, fronted upon the easterly side of Meridian Road (hereinafter referred to as the "old Meridian Road") between Paula and Pedro Streets, in San Jose. Old Meridian Road ran north and south and Paula and Pedro Streets ran east and west. With relation to defendant's property, Paula Street was to the north and Pedro Street was to the south. Old Meridian Road was 71 feet wide with four lanes of travel, two north and two south. It ran in a straight direction from beyond Fruitdale Avenue, the next street south and parallel to Pedro Street, past Paula Street to the next intersecting street and beyond. Defendant's property, in the before condition, had direct access to old Meridian Road along all of the frontage of the property.

---

[1]The notice of appeal states that the appeal is from the entire condemnation judgment. The appeal, however, as appears from the briefs and the points made on appeal, is directed solely to the denial of severance damages. Since no other errors are pointed out in the briefs, we are entitled to consider that any other claim of error is deemed abandoned and that we are confined to the sole issue raised on appeal. (*Rich* v. *State Board of Optometry*, 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512].) The notice of appeal is also stated to be "from the rulings of the Court made on admissibility of evidence, and from the denial of Defendant's Motion for a New Trial." No appeal lies from such rulings or the denial of such motion (Code Civ. Proc., § 904.1), but they are matters reviewable on the appeal from the judgment (Code Civ. Proc., § 906).

As a result of the contemplated improvement, a new divided four-lane highway will be constructed to the west of defendant's property and it will be known as Meridian Road (hereinafter referred to as the "new Meridian Road"). This road will commence at Fruitdale Avenue and will veer in a northwesterly direction passing under two expressways. At a point opposite defendant's property new Meridian Road will be 400 feet distant. The road fronting defendant's property (the old Meridian Road), will be narrowed to 36 feet between Pedro and Paula Streets and will permit one lane of traffic in each direction. Between Fruitdale Avenue and Pedro Streets the old Meridian Road will be further narrowed to permit one-way traffic only in a northerly direction. The old Meridian Road will not continue past Paula Street but will curve easterly into Paula Street, and when the improvements are completed, the old Meridian Road will be a continuation of Paula Street. This street (hereinafter sometimes referred to as the "new Paula Street") will be fenced by a chainlink fence on its westerly side from Fruitdale Avenue to its east-west lateral where the fence will run on its northerly side. This fence will prevent ingress or egress from the new Paula Street into the adjoining expressway area and the new Meridian Road.

It was for the purpose of facilitating the connection between Paula Street and the old Meridian Road that 1,488 square feet of defendant's property was acquired in the instant action. Specifically, the property taken will be used solely to "round out" the curb, gutter, sidewalk and paved surfaces connecting old Meridian Road with Paula Street. After construction of the improvements, the remaining 15,760 square feet of defendant's property will have a slightly improved frontage upon the very same street which fronted the property in the before condition. This is because the proposed curvature of old Meridian Road into Paula Street will add about six feet to the frontage of the property. Traffic will continue to have unrestricted flow past defendant's property to the next intersecting streets in both directions. There will be no direct access, however, from the new Paula Street to the new Meridian Road. In order to get to the new Meridian Road from defendant's property two alternative routes will be afforded. One of these will require going northerly and easterly along the new Paula Street one block to Race Street,[2] thence south along Race Street to Fruitdale Avenue, and thence westerly to the new Meridian Road. The other route will require going south along the new Paula Street to Pedro Street, thence easterly one block to Race Street, thence southerly to Fruitdale Avenue, and thence westerly to the new Meridian Road.

No construction relating to the building of the new Meridian Road or

---

[2] Race Street runs north and south and parallel to the old Meridian Road.

any of the highway improvements will take place on land acquired from defendant. Her land is being used solely and specifically to "round out" the connection between old Meridian Road and Paula Street.

At the trial, a real estate broker was called by defendant as an expert witness. He testified that the highest and best use of the property in the before condition was for commerical uses, but in the after condition, the highest and best use would be for medium density residential purposes. He based this opinion on the fact that in the after condition defendant's property will no longer be fronting on a commercial thoroughfare. The broker then testified that the property is more valuable as commerical property than as residential property.

The trial court concluded that there was no substantial impairment of access to defendant's property in the after condition and thereupon granted plaintiff's motion to exclude defendant's testimony on the issue of severance damages. The parties then stipulated to the value of the portion of defendant's property which was taken and judgment was entered accordingly.[3] Defendant assigns as error the ruling excluding evidence on the issue of severance damages.

■ Adverting to defendant's contention that the trial court erred in excluding testimony on severance damages, we note that Code of Civil Procedure section 1248 provides, in part, that, in eminent domain proceedings, where the property sought to be condemned constitutes only a part of a larger parcel, the court or jury must ascertain and assess the damages which will accrue to the portion not to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by plaintiff. ■ Accordingly, when a portion of private property consisting of a contiguous parcel of land is condemned for public use under the state's power of eminent domain, compensation is due not only for the value of the land directly taken, but also for so-called severance damages, that is, the damages to the remaining property as the result of its being severed from the part actually taken for public use. (*Southern Pac. R.R. Co.* v. *Hart,* 3 Cal.App. 11, 13 [84 P. 218]; *People* v. *Marblehead Land Co.,* 82 Cal.App. 289, 300-301 [255 P. 553]; *County of Los Angeles* v. *Signal Realty Co.,* 86 Cal.App. 704, 709 [261 P. 536]; *Imperial Irrigation Dist.* v. *Hamerson,* 86 Cal.App.2d 904, 905-906 [195 P.2d 542].)

■ A condemnee is not entitled to compensation, as severance dam-

---

[3]Defendant was paid a compensation of $4,300 for the parcel actually taken by the state. This is the amount stipulated to by counsels for plaintiff and defendant before the court, together with interest at 7 percent per annum from February 15, 1969, to the date of payment of said amount into court.

ages, however, for injury to his remaining land caused by the construction or maintenance of an improvement located on the lands of other persons and not lying on the property taken. (*People* v. *Symons,* 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451]; *People* ex rel. *Dept. of Public Works* v. *Wasserman,* 240 Cal.App.2d 716, 723-727 [50 Cal.Rptr. 95]; *Sanitation Dist. No. 2* v. *Averill,* 8 Cal.App.2d 556, 561 [47 P.2d 786]; see also *Breidert* v. *Southern Pac. Co.,* 61 Cal.2d 659, 666 [39 Cal.Rptr. 903, 394 P.2d 719]; *People* ex rel. *Dept. Pub. Wks.* v. *Ramos,* 1 Cal.3d 261, 264 [81 Cal.Rptr. 792, 460 P.2d 992].) ■ In *Sanitation Dist. No. 2,* cited in *Symons,* the principle is stated thusly: "An owner, whose land is being condemned in part, may not recover damages in the condemnation action to the remainder of his land caused by the manner in which the works are to be constructed or operated on the lands of others. The detriment for which he may recover compensation is that which will result from the operation of the works upon his land alone. [Citations.]" (8 Cal.App.2d at p. 561.)

■ In the present case it is uncontradicted that the 1,488 square-foot portion being acquired from defendant's larger parcel was not to be used for the construction and realignment of the new Meridian Road nor for any of the other highway works in the highway or freeway system, but only for rounding out the connection of old Meridian Road with Paula Street. The record clearly shows that after the construction is completed, defendant's remaining property will be at the same grade with the old Meridian Road, it will have the same access to this street and will have a slightly improved frontage from that currently possessed. The record also shows that the alleged damages for impairment of access to a major thoroughfare asserted to depreciate the value of the remaining land will result from the construction of the new Meridian Road. However, such public improvement is located on the lands of other persons and does not lie on any portion of the property taken from defendant. We must, therefore, affirm the trial court's denial of severance damages for injury to defendant's remaining land on the ground that the improvement which caused the loss does not lie on the property taken from defendant.

The taking in the instant case is analogous to the taking of the property in *Symons.* There, the street abutting the defendants' residence was terminated at the boundary of a new freeway which adjoined the defendants' property. The freeway was not constructed on the defendants' property but on the lands of other persons. A portion of the defendants' property was taken in order to make the abutting street into a cul-de-sac and provide a turn-around area. The defendants were awarded damages for the portion of their property which was taken, but were denied severance damages

by reason of the freeway construction which prevented access from the abutting street into the area occupied by the freeway.

Defendant's reliance on *People* ex rel. *Dept. Pub. Wks.* v. *Ramos, supra,* 1 Cal.3d 261, is misplaced. There, the property was taken for use as a part of the freeway itself. Although the property taken was not used for the paved portion of the freeway, it was used for a dirt strip or shoulder paralleling the traffic lanes and a fence was placed on it to act as a physical barrier to the limited access freeway. Similarly, in *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799], relied on by defendant, the portion of the improvement causing the impairment of access was actually constructed on the part taken. There, the westerly portion of property owned by the defendants was taken from them for the purpose of constructing an underpass. The contemplated underpass was to be constructed *upon* the land taken and upon its construction it changed the grade of a street upon which the defendants' property abutted so as to effectively block all ingress and egress to a main highway except by a circuitous route.

Defendant also places strong reliance on *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, and *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]. These were not actions in which severance damages were sought but actions for damages based on inverse condemnation. The essence of the holding in these cases is that a property owner is entitled to compensation where he is able to show a substantial impairment of his right of access to the general system of public streets by reason of the construction of a public improvement. (*Bacich* v. *Board of Control, supra,* at pp. 349-350; *Breidert* v. *Southern Pac. Co., supra,* at pp. 663-664, 666-667; see also *Valenta* v. *County of Los Angeles,* 61 Cal.2d 669, 671-672 [39 Cal.Rptr. 909, 394 P.2d 725].) ■ Such a claim rests upon the provisions of the California Constitution that private property may not be taken or damaged for public use without just compensation. (Cal. Const., art. I, § 14; *Breidert* v. *Southern Pac. Co., supra,* at p. 663; *Bacich* v. *Board of Control, supra,* at p. 349.) Under this constitutional provision a property owner whose land is not formally appropriated for a public use, but is substantially damaged by a public improvement, has a cause of action against the public entity to recover for the damage suffered. (*Olson* v. *County of Shasta,* 5 Cal.App.3d 336, 340 [85 Cal.Rptr. 77].)

■ "An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner." (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663, fn. 1; see also *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 400; *Frustuck* v. *City of Fairfax,* 212 Cal. App.2d 345, 364 [28 Cal.Rptr. 357].) ■ Although, generally speaking, the principles which affect the parties' rights in an inverse condemna-

tion suit are the same as those in an eminent domain action (*Breidert* v. *Southern Pac. Co., supra*), we perceive that there is a difference in the theory upon which severance damages are predicated in an eminent domain action in which a portion of the property is taken for a public improvement and the theory upon which a landowner is compensated for the impairment or diminution of an easement of access caused by the construction or maintenance of an improvement located on the lands of other persons. In the former, damages are deemed to have flowed from the severance of a portion of the owner's property or by reason of a construction or maintenance of public improvement upon the portion taken; in the latter, it is not required that it be shown that there was a severance or any impairment caused by the severance, but only that damage to the property in a substantial amount was proximately caused by the public improvement as deliberately planned and built, whether such damage is foreseeable or not. (See *Albers* v. *County of Los Angeles*, 62 Cal.2d 250, 256, 261-264 [42 Cal.Rptr. 89, 398 P.2d 129]; *Breidert* v. *Southern Pac. Co., supra*, at pp. 663-664; *Olson* v. *County of Shasta, supra*, 5 Cal.App.3d 336, 340.) It is immaterial whether such claim is asserted in a pending condemnation suit or by way of an action in inverse condemnation.[4]

▪ A landowner enjoys an easement of access which permits travel onto the street upon which his land abuts, and from there, in a reasonable manner, to the general system of public streets. (*Breidert* v. *Southern Pac. Co., supra*, 61 Cal.2d 659, 663; *Bacich* v. *Board of Control, supra*, 23 Cal.2d 343, 351, 355; *Valenta* v. *County of Los Angeles, supra*, 61 Cal.2d 669, 672.) Such an easement constitutes a property right (*Breidert* v. *Southern Pac. Co., supra*, at p. 663; *People* v. *Ricciardi, supra*, 23 Cal.2d 390, 397-398; *Rose* v. *State of California*, 19 Cal.2d 713, 727-728 [123 P.2d 505]), the substantial impairment of which is cognizable in an eminent domain proceeding. (See *Rose* v. *State of California, supra*, at pp. 720-721, 727-728, 737.)

▪ The determination whether the interference with access constitutes a substantial impairment is a question of law; if compensable impairment is found, then the extent of such impairment is a matter of fact for determination by the jury. (*Breidert* v. *Southern Pac. Co., supra*, 61 Cal.2d 659, 664.) ▪ In making the determination whether there is a sub-

[4]In an inverse condemnation action the burden of alleging and proving owner's property right and the infringement thereof is on the property owner, while in an eminent domain proceeding the condemning authority affirmatively alleges ownership in the property owner, the contemplated taking and severance, and seeks a determination by the court of issues confided by law to its decision, as well as a determination by the jury, unless one be waived, of the compensation which should be paid to the property owner. (*People* v. *Ricciardi, supra*, 23 Cal.2d 390, 400.)

stantial impairment of defendant's access to the general system of public streets and public highways, our inquiry is tantamount to determining whether her right of access has been unreasonably interfered with. (*People ex rel. Dept. of Public Works* v. *Wasserman, supra,* 240 Cal.App.2d 716, 730; *Rose* v. *State of California,* 19 Cal.2d 713, 729 [123 P.2d 505]; *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 398.)

Applying the test of substantial impairment to the instant case we conclude that there has been no such impairment. The effect of the subject highway construction is to preclude defendant from traveling directly north beyond the east-west lateral of Paula Street and directly south to Fruitdale Avenue beyond Pedro Street. The general system of public streets may be reached, however, by traveling *one block* east of old Meridian Road to Race Street which parallels old Meridian Road. As to the new Meridian Road, defendant never had access to this road since it is newly constructed as a part of the subject improvements. She has not, therefore, suffered any impairment of access to this road. In any event, assuming that new Meridian Road is relevant to the context of impairment of access to the general system of public streets, the record discloses that defendant is caused, at most, to travel a distance of 2,400 feet from her home to the nearest available entry into new Meridian Road.

In *Wasserman,* we held that an alternate route which was one-third of a mile longer after the construction of the improvement did not constitute a substantial impairment of the defendants' access to the general system of public streets. (240 Cal.App.2d at p. 730.) We observed that the defendants' right of access was not unreasonably interfered with "when it is considered that 'the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, . . .' [Citation.]" (At p. 730.)

The real basis of defendant's claim appears to be that she had a legal right to old Meridian Road in its before condition. This contention is without merit. The legal right which reposed in defendant was a right of access to the general system of public streets and not the right to have one particular street remain in its original condition. As observed in *People* v. *Ayon,* 54 Cal.2d 217, 223-224 [5 Cal.Rptr. 151, 352 P.2d 519], ". . . it is equally true that the right of a property owner to ingress and egress is not absolute. He cannot demand that the adjacent street be left in its original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. . . ." (See also

*People* v. *Ricciardi, supra,* 23 Cal.2d 390, 399.) In sum, defendant's compensable right was to an easement which permitted her to get into the street upon which her property abutted and from there, in a reasonable manner, to the general system of public streets. (*Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663.) Her access to the street on which her property abutted was unimpaired. From that street, as we have indicated, she could proceed to the general system of public streets in a reasonable manner.

We perceive, moreover, that defendant is, in reality, seeking compensation for the rerouting of traffic. This is clearly indicated by the testimony of her expert witness who testified that in the before condition the traffic flow in front of defendant's property in a 24-hour period was approximately 30,000 vehicles, and that as a result of the construction of new Meridian Road such flow will diminish considerably and thus will transform the highest and best use of the property from commercial to a less valuable medium density residential property.[5] Such diversion of traffic is not compensable. (*People* v. *Gianni,* 130 Cal.App. 584, 588-589 [20 P.2d 87]; *Rose* v. *State of California, supra,* 19 Cal.2d 713, 737; *People* v. *Ayon, supra,* 54 Cal.2d 217, 224; *People* ex rel. *Dept. Pub. Wks.* v. *Becker,* 262 Cal.App.2d 634, 641 [69 Cal.Rptr. 110]; *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 399.) ■ As observed in *Becker,* "The diversion of traffic is not a proper element to be considered in computing damages inasmuch as a landowner has no property right in the continuation or maintenance of the flow of traffic past his property. [Citations.]" (At p. 641.) We also note the following observation in *Ayon:* "The property owner has no constitutional right to compensation simply because the streets upon which his property abuts are improved so as to affect the traffic flow on such streets. If loss of business or of value of the property results, that is noncompensable. It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions." (At pp. 223-224.)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied June 11, 1971, and appellant's petition for a hearing by the Supreme Court was denied July 7, 1971. Peters, J., was of the opinion that the petition should be granted.

---

[5] We observe that the property, at the time of the taking, was zoned residential.