Filed 7/26/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC., | B241151 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC423661) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Ralph W. Dau, Judge.  Affirmed.

Carr & Ferrell, James W. Lucey, Marcus H. Yang and Robert J. Yorio for Plaintiff and Appellant.

Carmen A. Trutanich, City Attorney, Beverly A. Cook; Colantuono & Levin, Holly O. Whatley and Tiana J. Murillo for Defendant and Respondent.

Plaintiff j2 Global Communications, Inc. appeals from a summary judgment in favor of defendant City of Los Angeles on j2's claim for a refund of taxes it paid for telecommunication services it used in connection with services it provided to its customers over the Internet. j2 contends it is exempt from taxation on those telecommunication services under the Internet Tax Freedom Act, as amended in 2007 (ITFA) (47 U.S.C. § 151, note, § 1100 et seq.).[1] The trial court concluded that the City produced evidence to show that j2's purchase of telecommunication services did not fall within the ITFA exemption, and j2 failed to adequately rebut that showing. We agree, and affirm the summary judgment.

## BACKGROUND

j2 is a company that provides "online fax, virtual phone systems, hosted email, email marketing, online backup and bundled suites of these services" to businesses and individuals worldwide. One of its core services is eFax, which "enable[s] users to receive faxes into their email inboxes and to send faxes via the Internet" from their computers. To provide this service, j2 purchases telephone numbers known as Direct Inward Dial (DIDs) from third-party telecommunication providers. It assigns one or more DID numbers (local or toll-free) to each customer, from which the customer may receive faxes or voicemail messages in the customer's email. j2 remains the customer of record for all of those DIDs, and derives "a substantial portion" of its revenues from its DID-based services.

The City imposes a communications users tax (CUT) on charges for communications services, which, as defined in Los Angeles Municipal Code

---

[1] ITFA was originally enacted in 1998, and has been amended several times. The last amendment, in 2007, was made by the Internet Tax Freedom Act Amendments Act of 2007, which j2 refers to as the ITFAAA. Unless otherwise stated, references to ITFA in this opinion are to the Internet Tax Freedom Act as amended by the ITFAAA.

section 21.1.1, subdivision (b), includes the DIDs j2 obtained for its eFax service.[2] The tax is collected by the person providing the communications services (such as a telephone company) from the person paying for those services, in this case, j2. (LAMC § 21.1.3, subd. (a), (b).) j2 apparently paid the CUT on the DIDs it obtained for its eFax service.[3]

In May 2009, j2 filed with the City a claim for refund application, seeking a refund of approximately $175,000 in taxes collected from j2 during the period from May 2008 to May 2009. j2 asserted that "[t]hese taxes were incorrectly imposed on telecommunications service used for exempt Internet access." When the City did not respond to its application, j2 filed the instant lawsuit, alleging a single cause of action for unlawful collection of Internet access tax.

The City moved for summary judgment or, in the alternative, summary adjudication. The City argued it was entitled to summary judgment because j2's purchase of telecommunications services was not exempt from taxation under ITFA because j2 did not provide "Internet access" as defined in ITFA. The City also argued it was entitled to summary adjudication of its affirmative defense that j2 failed to exhaust its administrative remedies.

---

[2]    We need not describe in detail which services are included within the definition of "communications services," since it does not appear that j2 contends that the services at issue are outside the definition; rather, j2 argues that ITFA precludes the City from imposing taxes on j2's use of those services.

[3]    As the City notes in its respondent's brief, the City objected to j2's evidence that the City collected CUT from it, the trial court sustained that objection, and j2 did not challenge the trial court's ruling in its appellant's opening brief. j2's belated attempt to challenge the ruling in its appellant's reply brief does not suffice to preserve the issue for review. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 ["'Points raised for the first time in a reply brief will ordinarily not be considered'"].) Nevertheless, because the City's motion for summary judgment did not address whether j2 actually paid the CUT and appears to assume that it did pay, we will assume for the purposes of our review that the CUT was paid.

The trial court found the City was entitled to summary judgment, declined to address the City's motion for summary adjudication, and entered judgment in favor of the City. j2 timely filed a notice of appeal from the judgment.

## DISCUSSION

As noted, the City's motion for summary judgment was based upon its assertion that j2's purchase of telecommunications services was not exempt from taxation under ITFA. ITFA was first enacted by Congress in 1998 to temporarily impose a moratorium on the collection of taxes by state and local governments on "Internet access." (Pub.L. 105-277, Div. C, Title XI, Oct. 21, 1998, 112 Stat. 2681-719.) The moratorium was extended, and the definition of "Internet access" was modified in a series of amendments, culminating with the most recent amendment in 2007. (Pub.L. 110-108, §§ 2 to 6, Oct. 31, 2007, 121 Stat. 1024 to 1026.) At present (and at the time the taxes at issue in this case were collected), ITFA defines "Internet access" as follows:

"The term 'Internet access' –

"(A) means a service that enables users to connect to the Internet to access content, information, or other services offered over the Internet;

"(B) includes the purchase, use or sale of telecommunications by a provider of a service described in subparagraph (A) to the extent such telecommunications are purchased, used or sold. –

"(i) to provide such service; or

"(ii) to otherwise enable users to access content, information or other services offered over the Internet;

"(C) includes services that are incidental to the provision of the service described in subparagraph (A) when furnished to users as part of such service, such as a home page, electronic mail and instant messaging

4

(including voice- and video-capable electronic mail and instant messaging), video clips, and personal electronic storage capacity;

"(D) does not include voice, audio or video programming, or other products and services (except services described in subparagraph (A), (B), (C), or (E)) that utilize Internet protocol or any successor protocol and for which there is a charge, regardless of whether such charge is separately stated or aggregated with the charge for services described in subparagraph (A), (B), (C), or (E); and

"(E) includes a homepage, electronic mail and instant messaging (including voice- and video-capable electronic mail and instant messaging), video clips, and personal electronic storage capacity, that are provided independently or not packaged with Internet access." (47 U.S.C.A. § 151, note, § 1105, subd. (5).)

In moving for summary judgment, the City contended that j2 was not a provider of Internet access, and that its purchase of telecommunications services (i.e., the DIDs) did not qualify as Internet access as defined in ITFA. In support of its motion, the City submitted its statement of undisputed facts supported by evidence, including j2's Form 10-K Annual Report filed with the Securities and Exchange Commission; j2's form customer agreement for its eFax customers; the declaration of an officer of j2 that was filed in a lawsuit in federal district court, describing how faxes are transmitted to eFax customers; j2's Confidential eFax Corporate Operational Overview; and the declaration of a telecommunications expert, explaining how DIDs work.

According to the facts set forth in the City's statement of undisputed facts, j2 uses the DIDs (for which it paid the CUT) as part of its eFax service. In general, DID numbers are used in a private branch exchange (PBX), which is a switching system physically located on the premises of a telecommunications subscriber,

5

such as a law office. The PBX is connected to the Public Switched Telephone Network (PSTN), which is the generic term for the domestic public telephone network. Each station on a PBX is assigned a DID number drawn from a bank of numbers designated by a local phone company, which typically leases or rents DID numbers to user organizations in blocks of 50, 100, or 250. When an outside caller dials a DID number, the call is connected over a special DID trunk and is passed to the PBX, which automatically routes the call to the station assigned that DID number.

In the case of j2's eFax service, j2 assigns a DID number to each of its customers. When someone sends a fax to a DID number that has been assigned to a j2 customer, the sender is initiating a telephone call that travels over the PSTN to a fax card in one of j2's servers. When the incoming fax is received by a j2 server, it is converted to a customer-specified format (such as PDF) and sent to the customer as an attachment to an email. j2 does not provide its customers with the services required to receive and access the email; j2's customer agreement states that the customer must "obtain and pay for all equipment and third-party services (e.g., Internet access and email service) required for [the customer] to access and use eFax Services."

In opposition to the City's motion, j2 purported to dispute many of the City's facts describing how the eFax service works, but, as the trial court found, those purported disputes were ineffective both procedurally and substantively. For example, as to several of the City's facts, j2 stated the fact was "disputed" because the fact as set forth by the City "do[es] not provide a complete description of how fax transmissions are transmitted [or fax cards are utilized] as part of j2's Internet fax services." In support of its "dispute," j2 cited to the same evidence the City relied upon (although j2 merely cited to the entire documents without specifying a page, line, or paragraph). With regard to some of those facts and others, j2 also

6

stated that the City "mischaracterizes the scope and content of the information" on the pages of the documents the City cited to, but failed to explain exactly how the City's statement of the information was incorrect. In response to still other facts, j2 simply stated that the fact is "[d]isputed insofar as these statements are meant to describes [*sic*] or suggest how j2's services specifically work or operate." In no instance did j2 cite to specific evidence that contradicted or raised doubts as to the accuracy of the City's statement of facts, nor did j2 provide additional facts as to the operation of its eFax service and its use of DIDs. Therefore, as did the trial court, we deem the City's facts to be undisputed, and determine whether those undisputed facts preclude j2 from establishing that its DID-based services come within the definition of Internet access and thus are exempt from taxation under ITFA.

j2 contends that, notwithstanding the undisputed facts, its services qualify as Internet access under subdivisions (5)(A), (C), and (E) of ITFA's definition.[4] It notes that subdivision (5)(A) "only requires the following: *First*, the provided service must 'enable[] users to connect to the Internet' . . . [and] *Second*, this connection to the Internet must be 'to access content, information, or other services offered over the Internet.'" It argues that its eFax service meets both requirements because "its users necessarily must connect to the Internet through the eFax service in order to use the service," and its users use that connection "to receive inbound fax messages in their email inboxes, access these messages via a full-featured Web-based email interface, send digital documents to any fax number in the world directly from their desktops, and monitor this service using a Web browser-based account administration interface." In making this argument, j2 appears to ignore

---

[4] Although j2 addressed only these subdivisions in its appellant's opening brief, counsel argued at oral argument that its services also qualify as Internet access under subdivision (5)(B).

crucial language in subdivision (5)(A), and instead reads that subdivision to say that Internet access "means a service that enables users . . . to access content, information, or other services offered over the Internet."  The fact that j2's customers must connect to the Internet through the eFax service to access content, information, or other services does not show that j2 enables users "*to connect to the Internet*" to access that content, information, or other services, as subdivision (5)(A) requires.  (47 U.S.C.A. § 151, note, § 1105, subd. (5)(A), italics added.)  Indeed, the undisputed facts show that j2 requires its customers to obtain services from a third-party to enable them to connect to the Internet.  Thus, j2 cannot establish that its eFax service qualifies as Internet access under subdivision (5)(A).

For the same reason, j2 cannot establish that its eFax service qualifies as Internet access under subdivision (5)(C).  Under that subdivision, Internet access "includes services that are incidental to the provision of the service described in subparagraph (A) when furnished to users as part of such service."  (47 U.S.C.A. § 151, note, § 1105, subd. (5)(C).)  Because the undisputed facts establish that j2 does not provide the service described in subdivision (5)(A), its eFax service necessarily does not provide services incidental to that service.[5]

That leaves subdivision (5)(E).  Under that subdivision, Internet access "includes a homepage, electronic mail and instant messaging (including voice- and video-capable electronic mail and instant messaging), video clips, and personal electronic storage capacity, that are provided independently or not packaged with Internet access."  (47 U.S.C.A. § 151, note, § 1105, subd. (5)(E).)  j2 argues that its services meet this definition because it "provides a 'homepage' and 'electronic

---

[5]     For this same reason, j2's argument, raised for the first time at oral argument, that its eFax service qualifies as Internet access under subdivision (5)(B) also fails, since that subdivision applies only when the purchase of telecommunications is made "by a provider of a service described in subparagraph (A)."  (47 U.S.C.A. § 151, note, § 1105, subd. (5)(B).)

8

mail' to its users," since "eFax users receive faxes via email and access Web-based email and account interfaces via each service's home page." But sending an email to an eFax customer through that customer's independently-obtained email service, and allowing customers to access their accounts through eFax's home page do not constitute providing a homepage or electronic mail service to the customers. If it did, virtually all business conducted over the Internet would be exempt from taxation. We decline to interpret subdivision (5)(E) in such a way as to render ITFA's definition of Internet access essentially meaningless.

In any event, j2 presented no evidence that the telecommunications services that were subject to the CUT in this case (i.e., the DIDs) were utilized in providing a homepage or sending electronic mail to eFax customers. As noted, the undisputed facts are that the DIDs are used solely to transmit faxes from third parties to j2's servers. j2 then converts the faxes into a certain format and attaches them to emails that j2 sends to eFax customers; there was no evidence that the DID services are used for transmitting those emails. In short, j2 cannot establish that its purchase and use of DIDs for its eFax service is exempted from taxation under subdivision (5)(E).

We note that j2 asserts that other jurisdictions have determined that j2's services are exempt from taxation under ITFA, and that it has received refunds from at least two jurisdictions. Although it did not cite to any evidence of those determinations in its response to the City's separate statement of undisputed facts, j2 did submit to the trial court a document that purports to be a refund from the Minnesota Department of Finance, which j2 contends evidences that State's determination. The document, however, merely states that j2 is entitled to a refund, and does not indicate the reason for the refund.

But even if the document did indicate that the Minnesota Department of Finance found that ITFA exempted j2's services from taxation, it would not assist

9

j2 here.  We are reviewing a summary judgment based upon the record before the trial court.  The City presented evidence that j2's services were not exempt from taxation.  In opposing the City's motion, j2 bore the burden to show that a triable issue of material fact exists by pointing to evidence from which a reasonable trier of fact could conclude that j2's services were exempt under ITFA.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  It failed to do so.  Therefore, the City is entitled to judgment as a matter of law on j2's claim for a refund on the CUT it paid with respect to the telecommunications services it purchased.

## DISPOSITION

The judgment is affirmed.  The City of Los Angeles shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.

10