Filed 7/22/25  Think Eventos, LLC v. Cal. Dept. of Water Resources CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THINK EVENTOS, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF WATER RESOURCES,<br><br>    Defendant and Respondent. | D084032<br><br><br>(Super. Ct. No. CVRI2104479) |


APPEAL from a judgment of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed.

Black, Compean & Hall, Frederick G. Hall, Michael D. Compean, and Richard C. Turner for Plaintiff and Appellant.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Bruce D. McGagin, and Jeremy C. Thomas, Deputy Attorneys General, for Defendant and Respondent.


Think Eventos, LLC (Think Eventos), appeals the judgment in its inverse condemnation action against the California Department of Water Resources (the Department) for financial losses Think Eventos allegedly

suffered from the Department's plans to construct a project near Think Eventos's business. Think Eventos contends that in opposition to the Department's motion for summary judgment, it raised triable issues of material fact on whether the Department committed an intangible intrusion on its property rights or engaged in unreasonable precondemnation conduct that reduced the value of those rights, and the trial court impermissibly resolved those issues against it. We disagree and affirm the judgment.

I.

BACKGROUND

A.  *Perris Dam Modernization Project*

The Perris Dam sits above an urbanized area of Riverside County and forms part of the border of Lake Perris, the terminal storage facility for water for millions of Californians. The Department identified the dam as in need of seismic improvements and in 2005 initiated the three-phase Perris Dam Modernization Project: (1) the Perris Dam Remediation Project, (2) the Outlet Tower Improvements Project, and (3) the Emergency Release Facility Project (the ERF project). Phase 1 was completed in 2018, phase 2 is in the design phase, and phase 3 is in the planning phase.

Phase 3, the ERF project, is intended to protect the area below the Perris Dam from flooding by allowing rapid release of the water in Lake Perris in the event of an earthquake or other emergency. The ERF project will involve construction of new levees and drainage system, bridge and road improvements, and relocation of utilities. As part of its planning of the ERF project, the Department has been negotiating with the 46th District Agricultural Association (the District) to assume temporary or permanent jurisdiction, possession, and control over portions of the land immediately below the dam, which is known as Lake Perris Fairgrounds. The Department

2

in 2020 employed a business goodwill valuation firm to determine the financial impacts the ERF project would have on businesses operating at the Fairgrounds based on a then-anticipated construction schedule of November 2021 through March 2024. It remains uncertain when, if ever, construction will begin.

B.    *Pleadings*

Think Eventos operates an outdoor entertainment business at the Toro Wapo Arena on a portion of Lake Perris Fairgrounds leased from the District. In October 2021, Think Eventos sued the Department for economic losses associated with the ERF project.[1]  In the second amended complaint, Think Eventos alleged the construction would cause noise that would "drown[ ] out" the musicians and other artists performing at the Arena, would severely impede the flow of traffic into and out of the Fairgrounds, would eliminate 60 percent or more of available parking, and would harm the aesthetics of the area by replacing "wide open expanses" with "the uninviting sight of major construction equipment." Think Eventos further alleged its business requires "significant advance plan[ning]" with which the Department's "multiple announcements" of "imminent commencement of construction" constituted "specific and direct interference (see, generally, *Klopping v. City of Whittier* (1972) 8 Cal.3d 39 [*Klopping*])," and such interference deprived it of property rights. Think Eventos prayed for damages, declaratory relief, interest, costs, and attorney fees on counts labeled inverse condemnation, violation of due process rights, and declaratory relief.

---

[1]    Two other entities that leased land at Lake Perris Fairgrounds joined as plaintiffs. Oval Entertainment, LLC, operated a racetrack, and Family A Fair, Inc., operated a food and beverage concession. Think Eventos is the only plaintiff involved in this appeal.

The Department demurred to the second amended complaint. The trial court overruled the demurrer on the counts for inverse condemnation and declaratory relief, and sustained the demurrer without leave to amend on the count alleging due process violations.

C.    *Motion for Summary Judgment*

   1.    *Moving papers*

The Department moved for summary judgment on the inverse condemnation and declaratory relief counts. It argued it had no inverse condemnation liability, because it had not physically invaded Think Eventos's leasehold interest, sought to regulate that interest, or engaged in any unreasonable conduct designed to decrease the value of the interest before taking it. The Department argued the count for declaratory relief was derivative of the count for inverse condemnation and failed along with it.

In support of the summary judgment motion, the Department submitted the declaration of its employee, David Smith. He generally described the phases of the Perris Dam Modernization Project; the Department's negotiations with the District for assumption of temporary or permanent jurisdiction, possession, and control over portions of Lake Perris Fairgrounds for use in the ERF project; and his efforts to reach an agreement with Think Eventos on compensation for financial losses attributable to the ERF project, which would not be paid until the Department had awarded a construction contract for the project. Smith stated the ERF project "is still an active planned project," but "it is impossible to plan with certainty when future construction will start," and there is a possibility the project could "be indefinitely delayed or even abandoned." He identified "mitigation measures" designed to reduce the impact of construction activities on businesses operating at the Fairgrounds, including prohibition of construction activities

4

on weekends, development of a traffic control plan that would maintain ingress to and egress from the Fairgrounds during construction, and provision of alternative space for parking. Smith stated the Department had neither issued nor requested a resolution of condemnation or a resolution of necessity to condemn concerning Think Eventos's leasehold,[2] had no plan to buy out the leasehold for use in the ERF project, and intended to proceed with the project while Think Eventos continued to operate its business at the Fairgrounds. He stated he knew of no ERF project construction activities that had started or had physically invaded any portion of the Fairgrounds and no regulation that was meant to restrict Think Eventos's use of its leasehold.

In support of the motion, the Department also submitted a declaration from Donna Desmond, the president of a firm that specializes in valuing business goodwill loss in condemnation proceedings. She authenticated a report she had prepared for the Department concerning the loss of goodwill Think Eventos would suffer as a result of construction of the ERF project. Desmond assumed the project would be constructed between November 2021 and March 2024 and Think Eventos would continue its business operations during that time.

Additional supporting declarations and exhibits showed that in the few months before the Department moved for summary judgment, Think Eventos had been advertising and holding events at the Toro Wapo Arena. Attendees of a concert stated they were able to buy tickets in advance and to drive to

---

[2]    A public entity may condemn property subject to a lease if it needs the property for a public use and pays the lessee just compensation. (Code Civ. Proc., §§ 1235.170, 1240.010, 1263.310, 1265.150; *City of Vista v. Fielder* (1996) 13 Cal.4th 612, 616–618.)

5

and from and to park at the site without hindrance by or observation of personnel or equipment associated with construction activities.

2. *Opposing papers*

Think Eventos opposed the Department's motion for summary judgment. It conceded the Department had neither physically invaded its leasehold interest at Lake Perris Fairgrounds nor issued a resolution of condemnation of that interest. Think Eventos argued there were triable issues of material fact on whether, under *Klopping, supra*, 8 Cal.3d 39, the Department was liable for inverse condemnation based on unreasonable or oppressive precondemnation conduct that reduced the value of Think Eventos's leasehold. It further argued there were triable issues of material fact on whether it was entitled to compensation for business losses caused by the Department's announcements about the changing timeline for ERF project construction and the imminent physical encroachment on its leased land that would result from the construction.

With the opposition, Think Eventos submitted several declarations and exhibits. Its managing member, Xavier Ortiz, stated in a declaration that he reviewed documents on the Department's Web site associated with the ERF project and determined that the project would interfere with Think Eventos's business operations by increasing noise, occupying a portion of Lake Perris Fairgrounds used for VIP parking, impairing access to the Fairgrounds, and harming aesthetics. Ortiz described his retention in October 2020 of an attorney to protect Think Eventos's leasehold interest at the Fairgrounds and subsequent negotiations with Smith concerning compensation for business losses caused by the ERF project. Ortiz said the Department's public announcements about impending construction of the ERF project and the changing construction timeline prevented Think Eventos from effectively

6

mitigating the impacts of the project, caused booking agents and promoters not to schedule performances at the Toro Wapo Arena, and led to millions of dollars in lost revenue. One booking agent declared his company had scheduled well-attended concerts at the Toro Wapo Arena in 2019 and 2021, but "felt compelled to seek alternative venue options" when it learned of the ERF project.

Jules Radcliff, an attorney who represented Think Eventos and other businesses that leased land at Lake Perris Fairgrounds and would be affected by the ERF project, submitted a declaration describing communications he had on their behalf with Smith and Desmond. Smith told Radcliff one of the businesses, which operated a motocross venue, would need to relocate because the Department was going to take possession of the land it leased, and Think Eventos "might need to relocate due to the impacts of the relocation." Radcliff signed confidentiality and nondisclosure agreements and provided Desmond with financial and other information for her use in evaluating the loss of goodwill and other adverse financial effects the ERF project would have on the businesses. By e-mail dated May 26, 2021, Smith transmitted to Radcliff Desmond's loss of goodwill evaluation for the motocross business. The owner agreed to accept that amount plus compensation for relocation expenses and other business damages attributable to the ERF project. By e-mail dated May 27, 2021, Smith transmitted Desmond's loss of goodwill evaluation for Think Eventos to Radcliff. In the e-mail, Smith wrote: "I am still working out the timeframe for this payment as well as the terms, which I imagine will require some negotiation. At this time we do not intend to make any payments to tenants outside of the take area until next year after [the Department] has awarded a

7

construction contract for the project. However, we can begin working on the agreement language."

Think Eventos submitted 43 evidentiary objections to the declarations and exhibits the Department had submitted in support of the motion for summary judgment.

3. *Reply papers*

The Department filed a reply memorandum in which it argued Think Eventos had conceded it could not recover for a physical taking of its property, had neither alleged nor submitted evidence of a regulatory taking or an intangible intrusion amounting to a taking, and could not establish the essential elements for inverse condemnation liability under *Klopping, supra*, 8 Cal.3d 39. The Department submitted 59 objections to declarations and exhibits Think Eventos had submitted in opposition to the summary judgment motion.

4. *Trial court's order*

The trial court overruled all of Think Eventos's evidentiary objections. It sustained, on grounds of hearsay, lack of personal knowledge, or lack of foundation, some of the Department's objections, including those to portions of Ortiz's declaration in which he attributed the decisions of booking agents and promoters not to schedule performances at the Toro Wapo Arena to concerns about the ERF project, and to a portion of Radcliff's declaration describing his conversations with Desmond about the scope of her evaluations.

On the merits of the motion for summary judgment, the court ruled there was no triable issue of material fact on Think Eventos's claim for inverse condemnation. The court noted it was undisputed the Department had not physically invaded the land Think Eventos leased. There was no

8

triable issue of fact on whether any regulation effected a taking of Think Eventos's leasehold interest. Because the ERF project had not commenced, there was no intangible intrusion onto Think Eventos's leased land by noise, dust, or debris that could support an inverse condemnation claim. As to liability under *Klopping, supra*, 8 Cal.3d 39, the trial court ruled the ERF project was in the planning phase, not the acquisition phase, and there was no triable issue of fact on whether the Department intended to condemn Think Eventos's leasehold interest or unreasonably delayed condemnation. The court further ruled the claim for declaratory relief was "merely duplicative of the inverse condemnation claim" and failed for the same reasons the latter claim failed. The court granted the motion and entered judgment for the Department.

## II.

## DISCUSSION

Think Eventos contends the trial court failed to analyze the motion for summary judgment properly because it did not simply identify the issues framed by the pleadings and then determine whether the evidence showed a factual dispute on any of those issues that required a trial for resolution. Instead, it asserts, the court improperly acted as the trier of fact and resolved the disputed issues of fact. Think Eventos argues that had the court correctly analyzed the motion, it would have found triable issues of material fact on whether the Department's announcements and negotiations concerning the ERF project have so interfered with Think Eventos's use of its leased property at Lake Perris Fairgrounds that the Department is liable for inverse condemnation. Think Eventos asks us to reverse the judgment.

9

A.  *Standard of Review*

A trial court properly grants a defendant's motion for summary judgment only if there is no triable issue of material fact and the defendant is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.)  One way a defendant may prevail on the motion is to show the plaintiff cannot establish an essential element of its cause of action.  (Code Civ. Proc., § 437c, subds. (a)(1), (o)(1), (p)(2); *Dryden Oaks, LLC v. San Diego County Regional Airport Authority* (2017) 16 Cal.App.5th 383, 393 (*Dryden Oaks*).)  If the defendant meets that burden, to defeat the motion the plaintiff must identify specific facts showing there is a triable issue of material fact on the cause of action.  (Code Civ., Proc., § 437c, subd. (p)(2); *Dryden Oaks*, at p. 393.)  We review the trial court's ruling de novo, considering all the evidence submitted with the moving and opposing papers, except that to which objections were made and sustained, and drawing all reasonable inferences from the evidence in favor of the plaintiff.  (Code Civ. Proc., § 437c, subd. (c); *Bailey*, at p. 620; *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)  We are not bound by the trial court's stated reasons for its ruling; we review the ruling, not the rationale.  (*Dryden Oaks*, at p. 394.)

B.  *Inverse Condemnation:  General Legal Principles*

An action for inverse condemnation is one way an owner may enforce its constitutional right not to have its property "taken or damaged for a public use" without receiving "just compensation."  (Cal. Const., art. I, § 19, subd. (a).)  In an inverse condemnation action, the property owner must show the public entity has taken or damaged its property before it can reach the issue of just compensation.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 940 (*San Diego Gas & Electric Co.*).)  "To state a cause

of action for inverse condemnation, the property owner must show there was an invasion or appropriation (a 'taking' or 'damaging') of some valuable property right which the property owner possesses by a public entity and the invasion or appropriation directly and specially affected the property owner to his injury." (*Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 903; accord, *City of Los Angeles v. Superior Court* (2011) 194 Cal.App.4th 210, 221 (*City of Los Angeles*).)

Property is "taken or damaged" (Cal. Const., art. I, § 19, subd. (a)) so as to support an inverse condemnation action when a public entity: (1) physically invades the property; (2) physically damages the property without physically invading it; (3) intangibly intrudes onto the property, without physically damaging it, by putting a direct, substantial, and peculiar burden on the property; or (4) regulates the property so as to require a permanent physical invasion, deprive the owner of all economically beneficial use, or unduly restrict the owner's use. (*San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 940; *Today's IV v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1165–1166 (*Today's IV*); *640 Tenth LP v. Newsom* (2022) 78 Cal.App.5th 840, 859–860.)

Our Supreme Court has recognized another type of claim for inverse condemnation when, before condemning a property, "the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct." (*Klopping, supra*, 8 Cal.3d at pp. 51–52; see *Dryden Oaks, supra*, 16 Cal.App.5th at pp. 404–405.) It recognized this type of claim because "it would be manifestly unfair and violate the constitutional requirement of just compensation to allow a condemning agency to depress land values in a general geographical area prior to making its decision to take a particular parcel located in that

11

area." (*Klopping*, at p. 45, fn. 1.) Therefore, "a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (*Id.* at p. 52.)

C.  *Inverse Condemnation:  Think Eventos's Claim*

Think Eventos's claim for inverse condemnation involves no physical invasion of or damage to the land it leases at Lake Perris Fairgrounds.  Nor does it involve a regulation so restricting the use of the leased land that it amounts to a taking.  Rather, Think Eventos seeks to recover in inverse condemnation for financial losses it allegedly suffered as a result of the Department's announcements and negotiations concerning the ERF project, which Think Eventos argues constitute an "intangible intrusion" on its property rights and unreasonable precondemnation conduct under *Klopping, supra*, 8 Cal.3d 39.  As we shall explain, Think Eventos did not meet its burden on the summary judgment motion to submit evidence that shows a trial is needed to resolve factual disputes about the Department's liability on those theories.

At the threshold, we reject Think Eventos's contention we must reverse the judgment because the trial court did not apply the correct mode of analysis and engaged in impermissible factfinding when it granted the motion for summary judgment.  In its order, the trial court observed correctly (if unnecessarily) that whether a condemnor has acted unreasonably to reduce the value of condemned property is a question of fact for the court to decide in an eminent domain proceeding.  (See *City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 897.)  That isolated observation, however, does not

mean the court decided that question in granting the summary judgment motion. The order as a whole shows the court proceeded correctly by "(1) identify[ing] the issues framed by the pleadings, (2) determin[ing] whether the moving party has established facts justifying judgment in its favor, and (3) determin[ing] whether the nonmoving party has demonstrated a triable issue of material fact." (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206–1207.) The court identified the theories of inverse condemnation liability raised by the pleadings, considered the evidence the parties submitted on those theories, and determined Think Eventos had not submitted evidence sufficient to raise a triable issue of material fact on its theories. Even had the court not employed the correct mode of analysis, that would not necessarily require reversal of the judgment. We review the result the court reached, not the reasons that got it there. (*Travis v. Brand* (2023) 91 Cal.App.5th 996, 1006; *Dryden Oaks, supra*, 16 Cal.App.5th at p. 394.) We thus turn to the record to decide whether the Department was entitled to judgment as a matter of law on Think Eventos's inverse condemnation claim.

1. *Intangible intrusion theory*

Think Eventos did not raise a triable issue of material fact on its intangible intrusion theory of inverse condemnation liability. That theory requires a plaintiff whose land neighbors a public project to show that "the consequences of the project are 'not far removed' from a direct physical intrusion" onto its land (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 713), and that its land has been subjected to " 'singular and unique treatment' in contrast to [that of] other landowners who could be affected by the [project]" (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1548–1549). Courts have held intangible intrusions were actionable when,

13

for example, noxious fumes from a nearby sewage treatment facility entered onto the plaintiffs' land, made their home uninhabitable, and caused them nausea and burning eyes (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 289, 294, 296–299 (*Varjabedian*)); noise, smoke, and vibration from aircraft taking off and landing at an airport substantially interfered with the use and enjoyment of neighboring residential property (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 865–868; *Aaron v. City of Los Angeles* (1974) 40 Cal.App.3d 471, 493); and expansion of a freeway directly in front of the plaintiffs' property rendered it uninhabitable by reducing access to air, light, and view, increasing noise, and depositing dust, dirt, and debris on the property (*Harding v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 359, 363–367). Think Eventos made no showing of any such intrusion by the Department onto the land it leases at Lake Perris Fairgrounds.

In support of its intangible intrusion theory, Think Eventos relies on allegations of its second amended complaint that as a venue for outdoor entertainment events, "the additional noise, dust and other such construction activity" from the ERF project will materially affect its business, and the Department's multiple announcements that construction was "imminent" constituted "specific and direct interference" with the advance planning essential to its business. Think Eventos also relies on portions of the declarations of Ortiz and Radcliff to support its intangible intrusion theory. Ortiz stated he examined the environmental impact report for the ERF project and concluded that during construction, noise will disrupt performances at the Toro Wapo Arena, some access routes will be closed, traffic congestion will increase, and aesthetics will be harmed. He also stated the Department's public announcements about the changing project timeline

14

have prevented Think Eventos from developing plans to mitigate the construction impacts and have diverted millions of dollars in business to other venues. Radcliff described communications and meetings he had with Desmond and Smith about compensation to be paid to Think Eventos for the adverse impact that ERF project construction will have on its business. Based on these allegations and declarations, Think Eventos contends that although the Department "did not cause physical damage to the property," it "placed a burden on the current and immediate use of the property that is direct, substantial, and peculiar to the property itself," and the Department "was well aware of the 'intangible' nature of the 'intrusion'" that construction would cause. Think Eventos insists it "properly alleged an intangible intrusion of its property rights here, i.e., an intrusion of its ability to utilize the property it had rented for the purpose of conducting its concert business."

There are several flaws in Think Eventos's intangible intrusion theory of liability. The theory rests, at least in part, on the adverse effects on its business of the noise, dust, and traffic congestion that Think Eventos anticipates will result from the ERF project. The record, however, shows construction had not begun by the time of the summary judgment motion. In a supporting declaration, Smith stated that "construction has not yet started" and "it is impossible to plan with certainty when future construction will start." The Department also submitted photographs showing there was no construction equipment, personnel, or activity at Lake Perris Fairgrounds. Think Eventos submitted no evidence that construction had commenced. "Plaintiffs cite no case holding that an allegation of fear that an intangible intrusion may cause *future* harm to occupants of property is sufficient to charge a 'direct and substantial burden' on the property within the meaning of [the case law concerning intangible intrusions], and thus to satisfy the

15

'taking or damaging' requirement of the cause of action for inverse condemnation." (*San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 943.) "The very definition of a 'taking' requires an 'act' [citation], and the risk of future [intrusion] is not an act." (*Olson v. County of Shasta* (1970) 5 Cal.App.3d 336, 341.)

Another flaw in Think Eventos's theory is its reliance on the Department's multiple announcements of changes to the ERF project construction timeline as the "intangible intrusion" for which it seeks to impose inverse condemnation liability on the Department. Think Eventos contends the announcements have interfered with the advance planning needed to run its business effectively and caused prospective clients to take their business elsewhere, and the Department is well aware of these adverse effects. These contentions are largely based on allegations of the second amended complaint and on evidence to which the trial court sustained objections. Think Eventos cannot rely on such materials to establish a triable issue of material fact and avoid summary judgment. (Code Civ. Proc., § 437c, subds. (c), (p)(2).)[3]

Think Eventos's theory also lacks legal support for the notion that a public entity's announcements about the schedule for construction on particular land constitute an intangible intrusion onto neighboring land for

---

[3] In its opening brief, Think Eventos asserted there were "problems with the sustaining of those objections this Court should consider," but did not discuss any specific objection or explain, with cited authority, why the trial court should have overruled it. Think Eventos argued it had raised a triable issue of material of fact even without the evidence to which objections were sustained. In its reply brief, Think Eventos changed course and challenged the trial court's rulings on the objections. Such delay forfeited the challenge. (*Raceway Ford Cases* (2016) 2 Cal.5th 161, 178; *j2 Global Communications, Inc. v. City of Los Angeles* (2013) 218 Cal.App.4th 328, 330, fn. 3; *Beane v. Paulsen* (1993) 21 Cal.App.4th 89, 93, fn. 4.)

16

purposes of inverse condemnation liability.  Such announcements bear no resemblance to the noxious fumes, noise, vibration, dust, or debris from a public project that courts recognize as placing "a 'direct and peculiar and substantial burden' " on neighboring land and as being "not far removed from those core cases of direct physical invasion which indisputably require compensation." (*Varjabedian, supra*, 20 Cal.3d at pp. 297, 298.)  At most, the Department's announcements reduced the value of Think Eventos's leasehold at Lake Perris Fairgrounds as an outdoor entertainment venue by making it more difficult to attract performers and patrons to the venue.  "The constitution does not, however, authorize a remedy for every diminution in the value of property that is caused by a public improvement." (*Eachus v. Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 617; see *San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 942 ["a diminution in property value is not a 'taking or damaging' of the property"].)  "Merely rendering private property less desirable for certain purposes . . . will not constitute the damage contemplated by the constitution." (*Eachus*, at p. 617; accord, *Today's IV, supra*, 83 Cal.App.5th at p. 1174.)

In sum, Think Eventos's intangible intrusion theory of inverse condemnation liability fails both factually and legally.  The trial court correctly adjudicated that theory in favor of the Department.

　　2.　　Klopping *theory*

Think Eventos also failed to raise a triable issue of material fact on its theory of inverse condemnation liability under *Klopping, supra*, 8 Cal.3d 39.  In *Klopping*, a city commenced and later dismissed eminent domain proceedings against the plaintiffs' properties, but stated its "firm intention to reinstitute proceedings" in the future.  (*Id.* at p. 42.)  The plaintiffs sued the city for inverse condemnation, complained "the condemnation cloud hovering

17

over their lands" caused lost rental income, and argued "any decrease in the market value caused by the precondemnation announcements should be disregarded and . . . the property should be valued without regard to the effect of the announcements on the property." (*Id.* at pp. 46, 47.) The Supreme Court agreed and ruled that "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, [the] constitutional concern over property rights requires that the owner be compensated." (*Id.* at pp. 51–52, fn. 3.) The Supreme Court later explained that in *Klopping*, it "held only that the plaintiff should be able to include in his eminent domain damages the decline in value attributable to [the] unreasonable precondemnation action by the city." (*HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 516–517, fn. 14.) Hence, a plaintiff asserting a claim for inverse condemnation under *Klopping* must establish: (1) "the public entity engaged in unreasonable activity, either by excessively delaying initiation of an eminent domain action or by other oppressive conduct"; and (2) "the offensive conduct was a precursor to the entity's condemnation of the plaintiff's property for a public purpose." (*City of Los Angeles, supra*, 194 Cal.App.4th at p. 225.) Think Eventos cannot establish the second element.

In support of the motion for summary judgment, the Department submitted evidence that it had taken no steps toward condemning Think Eventos's leasehold at Lake Perris Fairgrounds. In his declaration, Smith stated the Department had not issued or requested either a resolution to condemn or a resolution of necessity to condemn Think Eventos's leasehold. He stated the Department planned to construct the ERF project while Think Eventos continued to operate its business and did not plan to buy out its

18

leasehold for use in the project. The Department also submitted the report Desmond prepared concerning the loss of goodwill Think Eventos would suffer as a result of ERF project construction. Desmond based her report on the assumption Think Eventos would continue to operate at the Fairgrounds while the Department "implemented various mitigation measures in order to reduce impacts of construction activity." This evidence showed Think Eventos could not "establish the most basic component of a *Klopping* inverse condemnation claim," namely, that the Department had condemned Think Eventos's property or had publicly expressed a "firm intention" to do so. (*City of Los Angeles, supra*, 194 Cal.App.4th at pp. 224, 226; see *Cambria Spring Co. v. City of Pico Rivera* (1985) 171 Cal.App.3d 1080, 1098 (*Cambria Spring Co.*) [no *Klopping* liability when "there was no official action amounting to an announcement of intent to condemn"].)

Think Eventos concedes the Department has not issued a resolution to condemn its leasehold at Lake Perris Fairgrounds, but argues the Department may still be liable for inverse condemnation under *Klopping, supra*, 8 Cal.3d 39. Relying on evidence of the Department's negotiations about payment of compensation to lessees operating businesses at the Fairgrounds and about acquisition of neighboring land, Think Eventos argues the Department had gone beyond the planning stage of the ERF project and had a clear intent to acquire Think Eventos's leasehold as part of the project. We disagree.

Think Eventos's argument fails because an intent to condemn does not alone suffice for *Klopping* liability. "[F]or any right to precondemnation damages to accrue, . . . there must have been either some formal announcement by the condemning agency of its intention to condemn, or some other official act or expression of intent to acquire the property in

19

question." (*Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 245.) "[T]he intent to condemn must in some way be communicated to the public so as to cause diminution in the value of the property." (*Dryden Oaks, supra*, 16 Cal.App.5th at p. 407.) There was no such communication in this case.

The negotiations between the Department and Think Eventos about compensation for financial losses due to construction of the ERF project did not involve the public and were subject to a confidentiality and nondisclosure agreement. In the report she prepared, Desmond did not appraise Think Eventos's leasehold for purposes of acquisition; she estimated the financial losses that ERF project construction would cause Think Eventos on the assumption it would continue business operations during construction. In transmitting Desmond's report to Radcliff, Smith made no mention of acquiring Think Eventos's leasehold. The Department's dealings with third parties also suggest no intent to acquire Think Eventos's leasehold. The Department issued a notice to vacate to the lessee that ran the motocross business at Lake Perris Fairgrounds and paid it for loss of goodwill, relocation expenses, and other business damages, because the Department will need the leased land to construct the ERF project and thus considered the lessee's business "a 'true relocate.'" It took no similar steps toward Think Eventos. The negotiations between the Department and the District that Think Eventos relies on concerned transfer of jurisdiction, possession, and control over certain portions of the Fairgrounds, including land Think Eventos has used for VIP parking. The negotiations did not concern condemnation of its leasehold.

The conduct described above "fall[s] short of demonstrating a publicly communicated unequivocal intent to acquire [Think Eventos's] property."

20

(*Dryden Oaks, supra*, 16 Cal.App.5th at p. 407.)  Nor did the conduct "result[ ] in the sort of 'special and direct interference' with [its] property which would be legally tantamount to an announced intention to condemn for purposes of establishing delay-based *Klopping* damages."  (*Contra Costa Water Dist. v. Vaquero Farms, Inc.* (1997) 58 Cal.App.4th 883, 900.)  Without "official action amounting to an announcement of intent to condemn, there could be no liability based upon unreasonable delay following such an announcement."  (*Cambria Spring Co., supra*, 171 Cal.App.3d at p. 1098; accord, *Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 510.)  Because Think Eventos failed to raise a triable issue of material fact as to whether the Department publicly announced an intent to condemn Think Eventos's leasehold, we conclude the trial court correctly rejected the *Klopping* theory of liability.  (Code Civ. Proc., § 437c, subds. (c), (p)(2); *Dryden Oaks*, at p. 406.)[4]

---

[4]      Our conclusion makes it unnecessary to decide whether the Department acted "unreasonably" by publicly announcing delays in the ERF project timeline or engaged in other "unreasonable conduct prior to condemnation."  (*Klopping, supra*, 8 Cal.3d at p. 52, italics added.) Precondemnation damages under *Klopping* are recoverable not whenever a public entity acts unreasonably, but only when the entity's misconduct was a precursor to condemnation of the plaintiff's property.  (*City of Los Angeles, supra*, 194 Cal.App.4th at p. 225; *Redevelopment Agency of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, 1135.)  Nevertheless, we note the concern in *Klopping*, namely, unreasonable conduct by a public entity intended " 'to depress the market value of the property for the purpose of acquiring it at less than market value' " (*Klopping*, at p. 51), is not at issue in this case.  The Department has no financial incentive to delay the ERF project in order to cause Think Eventos to lose business and reduce the value of its leasehold interest, because the Department is not going to condemn that interest.  Any loss Think Eventos suffers from delays in the project is a type of "incidental loss" the *Klopping* court recognized as not compensable in inverse condemnation.  (*Ibid.*)

C.  *Declaratory Relief*

The trial court also correctly ruled Think Eventos was not entitled to declaratory relief.  In the second amended complaint, it sought a judgment declaring the Department's actions constituted an unlawful taking of its property interests as an alternative remedy if the court decided "compensatory damages are not the appropriate form of relief" for inverse condemnation.  Because that remedy depends on the inverse condemnation claim and, as we have explained, that claim fails as a matter of law, the request for declaratory relief also fails.  (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.)

## III.

## DISPOSITION

The judgment is affirmed.  The Department is entitled to costs on appeal.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.